403 A.2d 95

M. H. DAVIS ESTATE OIL CO., INC., Appellant,

v.

SURE WAY OIL CO., INC.

M. H. DAVIS ESTATE OIL CO., INC., Appellant,

v.

Barry L. HADLEY, Evelyn S. Hadley and Luther Smith.

Superior Court of Pennsylvania.

Argued Dec. 5, 1978.

Decided May 4, 1979.

William J. Litvin, West Chester, for appellant.

Lawrence A. Goldberg, West Chester, submitted a brief on behalf of all appellees.

Before VAN der VOORT, WIEAND and LIPEZ, JJ.

VAN der VOORT, Judge:

These are appeals by a creditor from orders of the lower court, on petitions filed in two companion cases, opening judgments confessed against defendants and permitting defendants to defend.

The plaintiff in each case is a supplier to the corporate defendant, Sure Way Oil Co., Inc. at No. 816. The individual defendants at No. 817 are the President of Sure Way, his wife, and the secretary of Sure Way. Davis and Sure Way had done business with each other since October, 1972.

On May 4, 1976 Sure Way was indebted to Davis in the approximate sum of $33,000.00 on an open account. Barry L. Hadley, as President, and Luther Smith, as Secretary signed a corporate judgment note dated May 4, 1976 for $33,000.00 payable to M. H. Davis Estate Oil Co.

Barry L. Hadley, his wife Evelyn S. Hadley and Luther Smith signed individually a second judgment note dated May 4, 1976 for $33,000.00 payable to M. H. Davis Estate Oil Co.

On May 7, 1976 plaintiff filed a complaint on each of the notes and took confessed judgments, the first against defendant corporation and the second against the three individual defendants.

On July 7, 1976 defendants filed "Petition(s) for Relief from Judgment by Confession" (considered by the lower court as petitions to open judgment).

The petitions for relief recite that plaintiff represented that if the notes were signed, plaintiff would take them to its bank "and would obtain money for the Petitioners from said bank."; and that defendants executed the notes "based upon the aforesaid representations."

The petitions also recite that when the notes were executed the "demand date was excluded", meaning that the date of payment at the beginning of the note form was not filled in.

Petitioners then claimed (¶ 6) that their signatures were "obtained through fraud and deceit by the creditor."

Plaintiff filed answers to the petitions, denying the representations; denying that the demand date was not filled in; and denying any fraud.

Defendants and plaintiff then took depositions in support of their respective positions; and on December 21, 1977 Judge Sugerman entered orders opening the judgments. From these orders plaintiff has filed these two appeals to this Court.

Judge Sugerman has filed a Memorandum Opinion which is very helpful to us in the consideration of these cases.

The lower court has stated correctly that a petition of this kind is an appeal to the court's equitable powers, and is addressed to the sound discretion of the court; *Triangle Building Supplies and Lumber Co. v. Zerman*, 242 Pa.Super. 315, 320, 363 A.2d 1287 (1976).[1]

The court then stated correctly that Pa.R.C.P. No. 2959(e), as amended, states in pertinent part, that

" . . . If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment."

As the lower court then pointed out, citing *Greenwood v. Kadoich*, 239 Pa.Super. 372, 357 A.2d 604 (1976), in testing the sufficiency of the evidence,

---

1. Parenthetically, we tend to agree with plaintiff's argument (page 9 of the Brief) that the Superior Court is equally competent with the lower court to determine pertinent facts, since all testimony was by deposition.

" . . . the facts must be viewed in the light most favorable to [Petitioners] and we must accept as true all evidence *and proper inferences therefrom* supporting [Petitioner's] defense of fraud . . . " *Greenwood*, supra, 239 Pa.Super. 376, 357 A.2d 606. (Emphasis supplied).

Thus, the test in evaluating the petitioners' evidence is not whether the evidence will probably win a verdict from a jury, but only whether there is sufficient evidence to allow the disputed issue to go to the jury: *Wolgin v. Mickman*, 233 Pa.Super. 218, 335 A.2d 824 (1975).

In this present case, as in *Greenwood*, supra the essential issue is whether there was fraud on the part of plaintiffs inducing the execution of the judgment notes.

*Greenwood*, and many other cases, defines fraud as the misrepresentation of a material fact upon which the other party relies to his detriment or injury.

Whether a fraud has been committed is almost always a question of fact for the jury, provided, however, that the evidence meets the so-called higher "equitable standard" of proof, that is to say it is

"clear, direct, precise and convincing" *Kadilak's Est.*, 405 Pa. 238, 174 A.2d 870 (1961);

"precise, clear and indubitable" *Laughlin v. McConnel*, 201 Pa.Super. 180, 191 A.2d 921 (1963).

The defendants' offer of proof of fraud in this case derives almost entirely from the deposition of Barry Hadley. He says that on May 3, 1976, Boyd C. Davis, Jr., Vice-President of the corporate plaintiff, told Hadley by phone that:

"He had some papers for us to sign. My wife and Luther [Smith]" (Record, 42a).

" . . . He would take these papers to his bank and they would give him the money and this was not permanent financing. This would be temporary until we could get permanent." (record 43a)

" . . . he showed me where to sign on these papers and that he was going to turn these into his bank to get the money, the $33,000.00" (44a)

"He wanted my wife to sign them . . . " (44a)

" . . . as a guarantee on—for her to sign, you know, along with me . . . " (44a)

" . . . he wanted Luther to sign it . . . " (44a)

" . . . as a partner and as an officer [of the corporate defendant]" (45a)

"At anytime that these papers were given to you, did Mr. Davis explain to you that it was his intention to have these notes entered into the Court House in Chester County?"

"No" (50a)

(Davis said:) "These would be taken to the bank and they would give him $33,000.00" (50a)

"Did you, as far as you know, get anything as consideration for signing these notes?" (51a)

"No" (52a)

Cross Examination:

"Did you read the note?"

"No, I just glanced over it. I didn't really read anything." (60a)

" . . . She [his wife] just looked at it and she didn't read it in detail."

"You did explain to her, nevertheless, what the note was for?"

"Yes. It was for a temporary financing until he got permanent financing established and that's the only reason she signed." (61a).

Boyd C. Davis, Jr. deposed that his company did business with Sure Way Oil Co., beginning in 1972; that its indebtedness to Davis grew to $46,000.00 or $47,000.00 in the winter of 1975; and was $33,000.00 in the Spring of 1976; that "we were concerned about the size of it" (record 112a); that he had tried unsuccessfully in 1975 to help defendant corporation get credit from a local bank; that he knew defendant

approached three banks without success; that he prepared two notes for execution respectively by this corporate defendant and the individuals:

" . . . to secure the amount of money he [Hadley] owed us" (114a)

" . . . we had asked to have Mr. and Mrs. Hadley and Mr. and Mrs. Smith sign the note . . . under no circumstances would Mrs. Smith sign the note because she had signed a note prior to this . . . " (115a)

Cross Examination:

" . . . in May of 1976 you had an open book account with no security which you then attempted in May of 1976 to make secure?"

"That is correct." (125a)

" . . . you told Mr. Hadley that if he signed the note you could turn it in to your bank and it would help us? Is that what you said to Mr. Hadley . . . ?"

"I don't believe so, no."

"I told Barry that he could take the note, as such, and it would secure the line of credit that we had given him and we could use it to secure the line of credit that we needed to keep on buying the products on credit and selling it to him." (126a).

"I did not tell him I was going to turn it in to my bank." (127a).

The above summary and quotes seem to us to include all of the testimony of Hadley and Davis pertaining directly to the representations or misrepresentations made by Davis to secure the execution of the notes. Judge Sugerman says, (page 9 of his opinion, page 47 of appellants' brief) that:

"If Hadley's oral testimony were the only evidence of fraud, we would not grant the defendants relief as such testimony was diametrically opposed by the testimony of Davis . . . Hadley's uncorroborated testimony is not of sufficient weight as a matter of law to meet the standard for submission of the question of fraud of a jury . . . . "

We agree up to this point.

Judge Sugerman, however, found in the record "corroboration of Hadley's testimony".

This "corroboration" comes from some bizarre circumstances to which we estimate that 70 to 80 percent of the depositions are directed, specifically whether the due date had been filled in on the two judgment notes before they were signed by Mr. and Mrs. Hadley, and Mr. Smith, and whether the signatures of an attesting witness were added to the notes after delivery of the notes by Hadley to Davis.

The two judgment notes on which judgments were entered by confession are each witnessed by "L. Melva Thomas" on signature lines at the lower right. Each note also has typed in at the top center the words "On Demand" above a dotted line, and before the printed words "after date", etc.

The defendants produced at the depositions photostatic copies of each of these notes [2] which contained no attesting signatures, and no typed words saying "On Demand".

Hadley and Smith both testified that the due date was blank when they signed the notes, and that they were not witnessed.

Boyd Davis Jr. testified "definitely" that the words "on demand" were filled in on the notes when given to Hadley (Record 116a and 130a) [3] and denied that the words were typed on to the notes after he received them back from Hadley.

His brother Brooke W. Davis testified (Record 140a) that the words "On demand" were typed on the notes before delivery to Hadley. Brooke Davis was cross-examined at length on this point.

Their father, Boyd C. Davis, Senior, testified to the same effect and was cross-examined at length.

Plaintiffs also deposed their bookkeeper to the same effect.

2. Hadley testified (Record 83a) that he made copies of the notes after he signed them and before he delivered them to Davis.

3. Davis conceded (Record 131a) that the signatures of the witness were inserted after he received back the note.

Each side deposed an expert witness on the issue of when the words "on demand" were typed upon the note forms.

This issue was hotly contested. It seems obvious that Judge Sugerman believed that the words "on demand" were added to the notes after they had been signed by defendants and delivered back to Davis.

Again, we agree. We reject as incredible the suggestion that defendants covered with white paper the typed words "on demand" when defendants made their photostatic copies. We think that on May 4, 1976 defendants had neither the necessary expertise nor the motivation to make fudged copies.

We do not mean here to say that the notes became legally defective because the words "on demand" were typed in, and a witness's signature added, after redelivery of the notes to Davis.

All of the defendants admit that they signed the notes, so that the addition of a witness's signature is of no legal significance in this case.

 It is Hornbook law that one who signs a note containing blanks, impliedly authorizes the obligee to fill in the blanks. From a legal standpoint, it does not matter particularly that the words "on demand" were typed upon the note forms after they had been delivered back to Davis.

What is factually significant in this case is that Davis' unsuccessful contention and testimony that the words "on demand" were on the notes from the beginning substantially diminishes his general credibility on the issue of misrepresentations, and tends to strengthen or "corroborate" the testimony of Hadley.

 In all the circumstances we believe there is enough evidence here so that a jury should be permitted to decide whether the signatures on the notes were obtained "through fraud and deceit by the creditor" as averred in Paragraph 6 of the Petitions for Relief.

Judge Sugerman reviewed some of the pertinent circumstances and his conclusions were as follows: (Appellant's Brief, pages 47, 48)

"The legal import of the instruments is not the point. Rather, we again observe from Hadley's testimony that the financing arrangement allegedly proposed by Davis is inconsistent with the execution of judgment notes payable on demand which the holder might immediately record. Conversely, notes executed with the due dates in blank are entirely consistent with the plan assertedly proposed by Davis—a fixed repayment schedule along with a period of 'interest only', depending upon the bank's requirements. It is reasonable to infer from Hadley's testimony, and thus we are required to draw the inference, *Greenwood v. Kadoich, supra,* that the terms of repayment would be negotiated with the bank by Davis on behalf of the Defendants after the notes were received by the bank. Hadley makes clear that under no circumstances did he expect the notes to be recorded immediately. His deposition testimony is internally consistent. He testified that he was seeking on behalf of all Defendants a relationship with a banking institution in order to finance his business transactions with the Plaintiff. Such banking relationship was to hopefully endure over a period of time and be principally marked by a fixed repayment scheduled with the bank. This arrangement, Hadley testified, is what they were led to believe by Davis would result if the Defendants executed the notes, and in reliance upon Davis' representations, the notes were so executed.

Luther G. Smith, one of the Defendants and the Secretary of the corporate Defendant, testified on behalf of the Petitions to the same effect. He also testified that the due dates were in blank on the notes at the time he signed them.

Both Hadley and Smith testified throughout that they were anxious to continue their business relationship with the Plaintiff, and thus relied upon Davis for advice and assistance in that endeavor. The financial arrangement allegedly advanced by Davis to achieve that end appears designed to satisfy the Defendants' common desire.

We find on the whole record, considering not only the testimony of Hadley, but the corroborating physical evi-

dence in the form of the notes annexed to the Defendants' Petitions, that the issue of fraud raised by the Defendants is of sufficient weight to require submission to the Jury. Accordingly, we have followed the mandate of Pa.R.C.P. No. 2959(e) and opened the judgments.

We point out that Boyd C. Davis's own testimony is inconsistent with what actually happened. He testified that he told Hadley he wanted the notes to "turn it in to the people who gave us our line of credit . . ." (Record, page 114a). In fact it was filed with the Prothonotary on May 7, 1976, three days after its date.

Other significant circumstances present in this case are the desperate financial condition of the corporate defendant in May 1976; and the willingness of the three individual defendants (but not Mrs. Smith) to accept, without any legal consideration to them, individual liabilities for the corporate debt of $33,000.00, in the belief (or hope) that somehow the plaintiff was going to assist the corporate defendant to get financial relief from plaintiff's bank.

Orders affirmed.