Thomas A. BEARDSHALL and Annamae Beardshall, his wife

v.

MINUTEMAN PRESS INTERNATIONAL, INC., Appellant.

No. 81–1387.

United States Court of Appeals, Third Circuit.

Argued Oct. 14, 1981.

Decided Nov. 17, 1981.

Rehearing and Rehearing In Banc Denied Dec. 22, 1981.

---

Robert L. Potter (argued), Titus Marcus & Shapira, Pittsburgh, Pa., for appellant; Andre Weitzman, Braiterman & Johnson, P. A., Baltimore, Md., of counsel.

Maurice A. Nernberg, Jr. (argued), Nernberg & Laffey, Pittsburgh, Pa., for appellees.

Before HUNTER, ROSENN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The twin issues on appeal in this diversity case [1] stem from the instructions of the trial court to the jury. The plaintiffs, Thomas A. Beardshall and his wife Annamae, brought suit in the United States District Court for the Western District of Pennsylvania charging the defendant, Minuteman Press International, Inc. (Minuteman), a nationwide franchisor, with having committed common law fraud under Pennsylvania law [2] when it entered into a franchise agreement with the Beardshalls. The jury returned a verdict for plaintiffs in the sum of $70,000. The defendant filed a motion for a new trial and the plaintiffs filed a motion for a new trial on damages. The district court denied both motions and Minuteman has appealed. We reverse.

---

1. The plaintiffs are Pennsylvania citizens residing in Pittsburgh. The defendant is a corporation chartered under the laws of New York which has its principal offices in Farmingdale, New York.

2. The trial court applied Pennsylvania law. On appeal, the parties agree that Pennsylvania law governs.

## I.

In March 1978 Thomas Beardshall attended a start-your-own-business trade show in Pittsburgh where he spoke to a Minuteman representative. Beardshall, a college graduate, testified at trial that the representative gave him promotional literature, told him of the opportunities in the printing business, and showed him a financial statement of a company operated store which the representative described as a "typical mid-range operation." The company representative further informed Beardshall that a Minuteman franchise would carry its own operating expenses from the start, and should turn a profit in three to six months and provide a reasonable income within six to twelve months. Subsequently, Beardshall communicated with Minuteman's offices in Pittsburgh and visited a recently opened franchise in the area with another Minuteman representative who reviewed Beardshall's projected calculations on volume and profit.

The Beardshalls indicated their interest in obtaining a franchise in Pittsburgh, signed a preliminary agreement and made a deposit. Later, they decided to move to Savannah, Georgia. Minuteman officials tried to discourage them because they thought a Pittsburgh location had better potential. The Beardshalls, however, pressed for a location in Savannah and ultimately executed a franchise agreement with Minuteman for a Savannah location. After a two week training period they opened for business on July 31, 1978.

Dissatisfied with their first month's business and their projections as to future earnings, the Beardshalls wrote to Minuteman on September 5, 1978, and sought rescission of the agreement. Minuteman refused. The Beardshalls closed the shop on November 23, 1978, and returned to Pittsburgh. They thereupon instituted this lawsuit against Minuteman.

## II.

In his instructions to the jury, the trial judge charged, *inter alia*, that the plaintiffs bore the burden of proving their case "by a fair preponderance of the evidence." He defined at length what was meant by this burden of proof and also instructed the jury fully on the common law of fraud. Defense counsel at the time, replaced on this appeal, took no exceptions and stated that he had no objections to the charge. After a full day of deliberation, the jury informed the court that it was "hung." The court released the jurors for the day with instructions to resume their deliberations the next morning. The following morning the jury sent this message to the court: "Could you repeat the six points of fraud we are supposed to go by? In writing?" The trial judge thereupon had a statement typed containing the jury's question and the six elements of fraud, displayed it to counsel for the parties, and advised them that he intended to submit the document to the jury. Defense counsel objected to the submission on the ground that repetition of a section of the charge might emphasize an aspect which could be prejudicial to the defendant, especially if in writing.[3] Despite the objection, the court had the writing delivered to the jury. Shortly thereafter, it returned its verdict for the plaintiffs.

On appeal, Minuteman contends that the district court reversibly erred in two aspects of its instructions. First, the court committed plain and fundamental error in instructing the jury that the plaintiffs must prove their case by a preponderance of the evidence when, under the applicable Pennsylvania common law, they were obligated to meet the much higher standard of proving fraud "by clear and convincing evidence." Second, it erred when, having given entirely

---

**3.** The pertinent portion of defense counsel's objection to the written supplementary instruction was:

I'm objecting to the submission of a written answer to the plaintiffs' questions. I, also, object to a portion of the Court's charge being singled out and repeated, and repeated in writing. I think it's possibly prejudicial. It may highlight some particular point or section of the charge that I don't think is proper to highlight, and I'm objecting to the submission of this written answer by the Court.

oral instructions to the jury, it submitted to them over defendant's objection a typewritten, highly condensed statement of the substantive law of fraud which necessarily emphasized plaintiffs' theory of the case.

### III.

In determining whether the instructions on the burden of proof warrant reversal, we must first decide what burden Pennsylvania law places on those attempting to prove fraud. Then, if the charge was erroneous, we must determine whether the defendant can on this record raise the error on appeal and whether the error is so grave as to justify reversal.

In a recent decision the Supreme Court of Pennsylvania held that fraud or intent to defraud must be proved by " 'evidence that is clear, precise and convincing.' " *Snell v. Pennsylvania,* 490 Pa. 277, 281, 416 A.2d 468, 470 (1980) (citations omitted). In earlier cases the terminology varied. For example, in *Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 73, 97 A.2d 71, 74 (1953), two formulations for the burden of proof were used, "clear and convincing or . . . clear, precise and indubitable." Whatever the formulation, it is evident that under Pennsylvania law fraud must be proved by a higher standard than the preponderance of the evidence standard charged by the trial judge.

The plaintiffs contend that the "clear, precise, and convincing" standard enunciated by the cases is one only to be applied by the trial judge in deciding whether the case should be submitted to the jury. Once it is submitted to the jury, argue the plaintiffs, the jury's sole function is to determine which evidence is true. Therefore, the trial court having submitted this case to the jury, the plaintiffs conclude it committed no error when it instructed the jury that the plaintiffs had to prove their case by a fair preponderance of the evidence. This argument is implausible and must be rejected.

Plaintiffs misread the cases they cite.[4] Those cases stand only for the proposition that the trial judge must decide as a matter of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise and convincing to make out a prima facie case; they do not hold that once that burden is met, the jury may apply a lesser standard of proof in determining which evidence is true. Thus, if the trial judge determines there is sufficient evidence from which the jury could reasonably find that the plaintiffs have proven fraud according to this standard of proof, the judge may then submit the case to the jury. " 'Whether the evidence is true is a question of fact . . . but whether it meets the required standard which justifies its submission to the jury . . . is always a question of law . . . .' " *Aliquippa National Bank ex rel. Woodlawn Trust Co. v. Harvey,* 340 Pa. 223, 231, 16 A.2d 409, 414 (1940), *quoted in Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 68, 97 A.2d 71, 72 (1953); *M. H. Davis Estate Oil Co. v. Sure Way Oil Co.,* 266 Pa.Super. 64, 68, 403 A.2d 95, 97 (1979). The trial judge still has the duty to instruct the jury as to the proper burden of proof which plaintiffs must meet under the applicable law.

The elements of fraud were central to this case and the proper standard of proof to be applied was critical. Thus, the district court's erroneous jury instructions would normally require reversal. The troublesome question posed by the plaintiffs, however, is that counsel for Minuteman did not raise the issue of the erroneous charge during the trial; he took no exceptions and in fact acquiesced in the charge. The plaintiffs, therefore, assert that the defendant is precluded by Federal Rule of Civil Procedure 51 from raising it now. Rule 51 reads in part, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury

---

4. The cases cited by plaintiffs are *Highmont Music Corp. v. J. M. Hoffmann Co.,* 397 Pa. 345, 155 A.2d 363, 366 (1959); *Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 97 A.2d 71, 72 (1953); *Greenwood v. Kadoich,* 239 Pa. Super. 372, 357 A.2d 604, 606 (1976); *Edelstein v. Carole House Apartments, Inc.,* 220 Pa.Super. 298, 286 A.2d 658, 661 (1971).

retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

There is, however, a judicially created exception to Rule 51, the "plain error" doctrine, which this circuit recognizes. For example, in *McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir. 1960), this court found that the trial court in its jury instructions had failed to explain the application of the principles of law to the various possible factual conclusions. The court determined that Rule 51 did not preclude the raising of this issue on appeal, though no objection had been made to the trial court's instructions, because the error was fundamental. This court's application of the plain error doctrine was explicated in *United States v. 564.54 Acres of Land*, 576 F.2d 983, 987 (3d Cir. 1978) (footnote omitted), *rev'd on other grounds*, 441 U.S. 506, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979):

> [W]e have the discretion to review instructions *sua sponte* if the error is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice.

Plaintiffs' argument that the error in the charge is not plain or fundamental error is refuted by this court's ruling in *Ratay v. Lincoln National Life Insurance Co.*, 378 F.2d 209 (3d Cir.), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). In *Ratay*, we unequivocally held the trial judge's charge that under Pennsylvania law the elements of fraud must be proved by a preponderance of the evidence was fundamental error. Although counsel at trial had taken a general exception to the charge, we observed that his failure to object specifically to the erroneous burden of proof

would under Rule 51 ordinarily have barred consideration of that error on appeal. But because the error related to a critical issue, as it does here, and because it did not affirmatively appear from the record that the error was not prejudicial, this court determined that a new trial was necessary.[5] Applying this reasoning to the instant case compels us to reach the same result.

■ Plaintiffs, however, assert that because the Pennsylvania Supreme Court in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1976), abandoned the plain error doctrine, this court may no longer apply the doctrine in cases governed by Pennsylvania substantive law. But at least three circuits have indicated that the failure to object to jury instructions and the consequences thereof are procedural and are to be governed by federal law. In *Stewart v. Ford Motor Co.*, 553 F.2d 130, 139–40 n.9 (D.C.Cir.1977), Judge Skelly Wright, in writing for the court, noted:

> It is well established that, in federal courts, allegations of failure to object to jury instructions and the consequences of such failures are procedural and not substantive issues and, accordingly, are to be governed by federal law. *Batesole v. Stratford*, 505 F.2d 804, 807 (6th Cir. 1974); *Lester v. John R. Jurgensen Co.*, 400 F.2d 393 (6th Cir. 1968); *McNamara v. Dionne*, 298 F.2d 352, 355 (2d Cir. 1962).

We agree with the characterization of the failure to object to the instruction as procedural and hold that a new trial is necessary because of fundamental error committed in the charge on the burden of proving fraud.

## IV.

Because this case must be remanded to the district court for a new trial, we believe

---

5. On remand the district court, relying on an intervening state court opinion, again applied the "fair preponderance of the evidence" rule. On subsequent appeal, this court held that the district court had misread the intervening decision of the Supreme Court of Pennsylvania and reaffirmed the principle that fraud in the making of a contract must be established by proof which is "clear, precise and indubitable." We noted that the Supreme Court of Pennsylvania recognized the basic difference between the two standards of proof and indicated, as we had held, that "in Pennsylvania the difference between the two standards of proof is a matter of substantial significance and not a mere verbal variation." *Ratay v. Lincoln Nat'l Life Ins. Co.*, 405 F.2d 286, 290 (3d Cir. 1968).

that we should offer some guidelines on the second issue raised by the defendant, the supplemental condensed written instruction. In the oral charge on the elements of common law fraud, the court laid down the six elements and then carefully explained them. His explanation set forth qualifications to the elements of fraud and these embodied the defendant's theory of its case. For example, the oral charge carefully explained the distinction between factual misrepresentation, which may be actionable, and statements of opinion or mere "puffery" or salesmanship. The written submission merely set forth a skeletal, abstract outline of the elements of fraud; it made no allusion to qualifications or the defendant's theory of the case. Minuteman complains that inclusion of the explanatory material would have been necessary to avoid misleading the jury. The defendant further hypothesizes that the written instruction tended to mute the oral instruction in the memory of the jury and thus effectively displaced the explanation of terms of art and the defendant's theory found in the oral instructions, thereby prejudicing the defendant's case.

■ Giving supplemental instructions to the jury is usually a delicate and sensitive task requiring the exercise of judgment and skill. The task becomes even more delicate when the principal charge is oral and the supplemental instructions are in writing because of the risk of accentuating a segment of the charge by reducing it to writing. But as the plaintiffs argue, the court has a duty to respond to a jury's request for specific instructions and the form and extent of supplemental instructions are within the sound discretion of the court. In *Price v. Glosson Motor Lines, Inc.,* 509 F.2d 1033, 1037 (4th Cir. 1975), cited by the plaintiffs, the court noted that supplemental instruction, when requested by the jury in whole or in part, "seems to be almost universally upheld in the Courts of Appeals." The court further held that the failure of the district court to respond to the jury's question as to the effect of plaintiff's contributory negligence on defendant's liability in a personal injury action was reversible error.

But in so holding, the court explained some of the precautions to be observed which are of relevance here.

An aspect of an overall charge can be amplified and explained, in response to a jury's inquiry, without prejudicially emphasizing any one aspect of the case. Ordinarily the district judge need not repeat the entire charge. *He can remind the jury of the other aspects of the case covered by his charge and he should caution them that the aspect of the charge which he amplifies and explains should not be given undue weight and should be considered in the light of his other instructions.*

*Id.* at 1037 (emphasis supplied).

In *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1315 (5th Cir. 1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978), the court found no error in a written supplemental outline to the jury of the elements which the plaintiff had to prove in his case. The court, however, noted that it found no reversible error because the district court had "specifically and repeatedly instructed the jury . . . that the elements written down were contested and constituted only an outline of those items on which [the plaintiff] bore the burden of proof." *Id.* The court thus implied that had the district court failed to qualify and explain the skeletal nature of the instructions, the resulting prejudice to the defendant could have constituted reversible error.

■ In the case at bar, the written statement to the jury listing seriatim the "bare bones" elements of fraud contained no qualifying instructions and lacked the amplification of the original oral charge. As submitted, the writing listed the elements of the Beardshalls' case and, therefore, emphasized their theory of the case. Furthermore, there is the risk that the jury might have used the writing as a checklist, relying solely on its language for content and ignoring the more elaborate and explanatory oral instructions. Although we do not disapprove a limited supplemental instruction

to the jury in writing, especially when the jury requests that it be in writing, the practice has risks.[6] If it is used, trial courts should avoid prejudicial emphasis on part of the case by carefully reminding the jury of other aspects of the original charge and cautioning them that the segment of the charge which is amplified or explained should be considered in the light of the other instructions and is not to be given undue weight.

The judgment of the district court will be reversed and the case remanded to the district court with directions to award the defendant a new trial.

---

**6.** The Fifth Circuit disapproves of the practice of furnishing the jury with a written copy of the court's instructions. *United States v. Perez*, 648 F.2d 219 (5th Cir. 1981); *United States v. Hooper*, 575 F.2d 496 (5th Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978). The Seventh Circuit apparently approves of the practice. *United States v. Brighton Bldg. & Maintenance Co.*, 598 F.2d 1101 (7th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).