515 A.2d 584

**Sylvia and Theodore OSTROFF, Ind. and as Administrators of the Estate of Marlene Ostroff, Deceased, Appellants,**

**v.**

**KEYSTONE INSURANCE COMPANY, Appellee (Two Cases).**

Superior Court of Pennsylvania.

Argued May 12, 1986.

Filed Sept. 24, 1986.

110

Edwin P. Smith, Philadelphia, for appellants.

Michael W. McCarrin, Philadelphia, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, McEWEN, DEL SOLE, BECK, TAMILIA, KELLY and JOHNSON, JJ.

CAVANAUGH, Judge:

Sylvia and Theodore Ostroff, individually and as administrators of the estate of their daughter, Marlene, appeal from an order of the Philadelphia Court of Common Pleas which vacated an award of arbitrators. We affirm.

On January 23, 1978, Marlene Ostroff died from injuries suffered in an accident which occurred while she was a passenger in an automobile driven by an insured of Keystone Insurance Company. At the time of her death, Ms. Ostroff was living with her parents (appellants herein) who also carried insurance on their two automobiles with Keystone. Ms. Ostroff's estate collected $15,000.00 from Keystone pursuant to the policy carried by the driver of the car in which she sustained her fatal injuries.

Pursuant to their own policy with Keystone, Mr. and Mrs. Ostroff (appellants) filed an *underinsured* motorist claim. Appellants' policy did not provide for *under*-insurance coverage, but did provide for *un*-insurance coverage. Keystone denied liability for underinsurance coverage and appellants petitioned the court to compel the appointment of an arbitrator. The lower court reluctantly ordered the matter to proceed to arbitration under the authority of *Gordon v. Keystone Insurance Company*, 277 Pa.Super. 198 n. 2, 419 A.2d 730 n. 2 (1980). In its opinion, the lower court wrote: "Although it is beyond the ken of this court how the term underinsured can be equated with the term uninsured except by the use of Orwellian logic wherein language means the opposite of what it says, this court is constrained to comply with ... *Gordon v. Keystone Insurance Company, supra,* where the court in a similar case ordered the matter to proceed to arbitration on the narrow basis that the policy terms were ambiguous despite the fact

that the term uninsured was explicitly defined and used throughout the arbitration provision." Lower court opinion at 2. *Gordon* was later expressly overruled in the en banc case of *White v. Concord Mutual Insurance Co.*, 296 Pa.Super. 171, 442 A.2d 713 (1982). *White* held that when one recovers from another driver the minimum amount of liability insurance required by Pennsylvania law, he may not proceed to arbitration on the basis that his own policy provides for "uninsured" coverage. "Uninsured" is not the same as "underinsured", and the question of whether they *are* the same should not proceed to arbitration.

Keystone appealed to this court from the order appointing an arbitrator. This court affirmed the lower court and stated: "[T]he question [to be resolved in arbitration] is whether [appellants] had underinsured coverage." *Ostroff v. Keystone Insurance Company*, 301 Pa.Super. 73, 446 A.2d 1341 (1982). The matter was properly sent to arbitration because the insurance policy itself provides: "If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or of an underinsured motor vehicle ... either party may make a written demand for arbitration." Thus, it was appropriate that the arbitrators decide whether the policy contained underinsured coverage.

The history of this case leading up to arbitration suggests that the appellants sought arbitration to decide the question of *whether the policy itself* provided for underinsurance coverage. Appellant's original petition to appoint an arbitrator states: "[T]here is a question whether or not ... said policy provides for underinsured coverage." Moreover, we have reviewed the brief which was submitted to this court by appellants when the matter was here on the appeal from the order to appoint an arbitrator. In that brief, appellants argued that the question of whether the policy provided underinsurance coverage is for arbitration. Nothing was suggested by the initial petition or aforementioned brief that appellants would seek recovery from Keystone on the basis of matters not found in the policy. More specifically,

nothing was suggested that appellants would seek recovery based on alleged statements made by Keystone's policy representative which are separate from and nowhere found within the four corners of the insurance policy itself.

We further note that in their reply to Keystone's new matter, appellants wrote that the question as to whether they had purchased underinsurance coverage was a question of law.[1] This is in marked contrast to a cause of action grounded in *fraud* which is almost always a question of fact. *M.H. Davis Estate Oil Co., Inc. v. Sure Way Oil Co., Inc.*, 266 Pa.Super. 64, 403 A.2d 95 (1979).

Thus, it seems clear that the theory upon which appellants urged this matter to be arbitrated was based on the *language contained within the four corners of the written policy,* not upon external fraud and misrepresentations allegedly made by Keystone's representative. The question for the arbitrators was therefore a very narrow one: Did the insurance policy's terms accord appellants underinsurance coverage?

The matter was then submitted to a panel of three arbitrators. After hearing all the testimony, two of the arbitrators rendered a decision in appellant's favor and awarded them $319,653.00. One arbitrator dissented.

Appellants argue on appeal that the insurer fraudulently misrepresented that appellants purchased underinsured coverage in the full amount. In support of the argument, they refer to their supplemental trial brief, which purports to summarize certain of the evidence presented at the arbitration hearings. That brief, which appellants have reprinted in their reproduced record, asserts the following. Mrs. Ostroff testified that when she sought to purchase insurance from Keystone, she made it perfectly clear that she wanted the maximum amount of automobile coverage written by Keystone. It was contended that the Keystone

1. Our Supreme Court recently reaffirmed that the principal task of insurance policy interpretation and construction is a question for the court, *Standard Venetian Blind Co. v. Am. Empire Ins.*, 503 Pa. 300, 469 A.2d 563 (1983).

representative told her that the policy he was providing did in fact contain this maximum amount of coverage. Mrs. Ostroff asserted that she periodically called the Keystone representative during the period 1976–1977 whenever she bought new cars and that each time requested full coverage. The Keystone representative assured her that the policies given to her contained *all* coverages available *and* were for the maximum amount of coverage being written by Keystone. Appellants allege that at the arbitration proceedings (wherein the testimony proferred was not transcribed) they *totally* relied on the argument that fraudulent misrepresentations of the Keystone salesman entitled them to underinsured motorist coverage up to $500,000.00.

In effect, the appellants, having won access to an arbitration hearing, astonishingly abandoned their previous position of arguing that the policy *itself* provided underinsurance coverage and fashioned a new argument wherein they presented evidence wholly unrelated to the actual terms of the policy. Keystone motioned the lower court to vacate the award. The lower court, (Judge White presiding) granted the motion, and this appeal followed.

The language in the policy is clear and unambiguous: appellants do *not* have underinsured coverage. Appellants paid no premiums for the allegedly $500,000.00 worth of underinsurance coverage they claim they are entitled to. We note that had their daughter been injured in an accident with an *un* insured motorist, their policy itself allowed just $15,000.00 coverage. Yet, appellants would have us reinstate a decision that would grant them something in excess of $304,000.00 more than this for a type of coverage which is not even listed on the declarations sheet.

In the opinion of the lower court, the Honorable Thomas A. White noted that "this court ... cannot find an underinsured motorist clause in the policy...." Appellants do not persuade us that the lower court erred. On the declarations form of the policy, the following appears: "Coverage is provided where a premium or limit of liability is shown for the coverage." Beneath this, *un* insured motorist cov-

erage is indicated, along with the premium charged, but *under* insured motorist coverage is nowhere mentioned.

Appellants point to certain evidence which, they contend is proof that the policy provides for underinsured coverage. First they point to a "liberalization clause" which states:

### LIBERALIZATION CLAUSE

If after issuance of this policy and before its expiration, there be adopted and published for use by the company any forms, endorsements or rules by which this insurance could be extended or broadened without additional premium charge, by endorsement or substitution of form, then, as to loss occurring after the effective date of such adoption and publication, such extended or broadened insurance shall inure to the benefit of the insured hereunder as though such endorsement or substitution of form has been made.

Appellants' brief further states: "[A] Keystone underwriter produced at the [arbitration] hearings the Keystone 'Private Car Manual' which the company provides to its sales representatives and by which their authority is determined. A portion of this 'Private Car Manual' . . . clearly states that *underinsured motorist coverage,* at the 'basic limits', (which is nowhere defined in the documents supplied by Keystone for the applicable periods) *is provided at no additional charge."* Therefore, according to appellants, this underinsured motorist coverage falls within the provision of the liberalization clause, and thus, they had underinsured coverage at the time of the accident.

We disagree. Keystone's rebuttal to this argument is as follows:

"This rule [found in the liberalization clause] merely provides a mechanism to allow a Keystone insured to recover the basic limits which at the time of the plaintiff's death here were $15,000.00 against any operator of a vehicle from a state not requiring $15,000.00 worth of coverage. In the instant case, appellants' decedent recov-

ered the "basic limits" of coverage required by the State Financial Responsibility Law. Clearly, this is not an underinsured situation as described in the private car manual...."

Appellants' contention with respect to the liberalization clause does *not* allege that the clause itself provides $500,-000.00 worth of coverage. Appellants claim they are entitled to this inflated figure because the insurance agent fraudulently misrepresented that they had underinsurance coverage up to that amount.

■ Therefore, the question before us is whether the arbitrators only had authority to interpret the terms of the policy itself or whether they also had authority to consider external evidence of fraud and misrepresentation and, if finding such evidence to be credible, in effect enlarge the coverage provided by the terms of the policy. We believe that the arbitrators were limited to interpreting the terms of the policy and that consideration of tort theories to enlarge the coverage listed on the face of the policy was improper.

The arbitration clause in question states: "If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or of an underinsured motor vehicle ... either party may make a written demand for arbitration." In the context of insurance disputes, the rule of construction *contra proferentem* holds that insurance contracts are to be construed most strictly against the drafter. However, this principle does not talismanically convert the above-quoted arbitration provision into a clause that allows for *every* dispute to be arbitrated. In *Hade v. Nationwide Ins. Co.*, 349 Pa.Super. 541, 503 A.2d 980 (1986), we wrote:

"Our review of the relevant caselaw has unearthed no opinions in which a court of this Commonwealth was faced with the issue of whether misleading actions of an insurance company's agent is an arbitrable issue when uninsured motorist benefits are sought. Certainly, we

118

are not prepared to hold that such agent misconduct is patently arbitrable.... We cannot say with 'positive assurance' that an agreement to arbitrate disputes over coverage does not encompass the misleading acts of appellant's agent."

Id., 349 Pa.Superior Ct. at 548, 503 A.2d at 984.

The court in *Hade* permitted the arbitrators' award of $300,000.00 to stand, despite a $60,000.00 policy limit.

The facts in the instant case distinguish it from *Hade*. The appellants here had continually represented that they were pursuing arbitration so that the *terms of the policy* could be interpreted. That is, they sought arbitration on the basis of the theory that coverage was provided within the four corners of the policy itself. Having so defined their reason for seeking arbitration, and having had both the Court of Common Pleas and this court validate this rationale as the purpose for going to arbitration, appellants will not now be heard to complain that we do not accept their attempts to switch arguments in midstream.

■ It is, of course, up to the court to determine the matters which are to be submitted to arbitration by looking to the arbitration agreement. Arbitrators have no power to determine the extent of their own jurisdiction or to decide what questions the parties have agreed to submit to arbitration. *Women's S.P.C.A. of PA. v. American Arb'n. Ass'n.*, 440 Pa. 34, 269 A.2d 888 (1970). In affirming the order to proceed to arbitration, this court expressly stated that the question to be resolved by arbitration is whether the appellants had underinsurance coverage. This is different from saying that the question is whether appellants *believed* they had such coverage or that they *relied* on alleged fraudulent misrepresentations made by the Keystone representative.

■ Having pursued a claim for interpretation of their insurance contract and having won access to the arbitration forum for that purpose, appellants ingenuously sought to pursue a tort theory which would, in effect, rewrite the contract rather than interpret it. False representations, if

made, form the basis for an action in trespass with consequent damages. *Shane v. Hoffman,* 227 Pa.Super. 176, 324 A.2d 532 (1974). There is nothing in the history of this case nor the arbitration clause in question which would elevate the arbitrators to the status of a court of general jurisdiction.

In the instant case, the arbitrators extended their jurisdiction beyond that which the courts had authorized. They decided that their jurisdiction included the consideration of evidence beyond the four corners of the insurance policy. The arbitrators found this evidence to be credible even though we have no evidence that the theory of fraudulent misrepresentation was ever proferred prior to arbitration; even though the declaration sheet of the policy indicates that appellants had no underinsured coverage; and even though appellants had been insured by appellee for some twelve years, and presumably had policy declarations in their possession during that period of time. To permit arbitration of fraud and misrepresentation in the context of the facts of the instant case would, we fear, lend judicial approval to an abuse of the arbitration process.

Moreover, to reinstate the arbitrators' award here would have the unwise effect of subordinating the actual terms of the policy to all manner of evidence of what the parties *believed* the policy's terms were. In this respect, we find that the instant case is similar to *McDonald v. Keystone Insurance Company,* 313 Pa.Super. 404, 459 A.2d 1292 (1983).

In *McDonald,* appellant was a passenger in a car when the driver drove into a utility pole, seriously injuring appellant. Appellant recovered some of her damages via the driver's insurance, but sought to recover the remainder under her own insurance policy. She contended that the driver was "uninsured" as to her remaining losses which driver's insurance did not cover. When appellant applied for auto insurance, she alleged that she requested "full and complete" coverage. The insurance agent sold her a standard policy *without* underinsured coverage. "The agent

never explained ... that, if appellant wished to purchase insurance with higher policy limits, she could also obtain a form of excess, or underinsured motorist, coverage that would pay the difference between her policy limits and those of a liable third party with lower policy limits." *Id.*, 313 Pa.Superior Ct. at 406–07, 459 A.2d at 1293.

This court, sitting en banc, wrote:

"Appellant contends also that [the insurance company] is estopped from denying her ... motorist coverage because [the company's] agent failed to comply with her request for 'full and complete' coverage or to adequately explain how the minimum coverage she purchased would fall short of being full and complete.... Our courts ... recognize traditional estoppel theories in the insurance context, as when the insured justifiably relies, to her detriment, upon the representations or promises of the insurer or its agent.... [The company's] not paying 'uninsured' motorist benefits when another motorist's insurer has already paid amounts equal to appellant's policy limits did not defeat [the insured's] reasonable expectations about 'uninsured' motorist coverage. Nor is [the company] estopped from denying coverage by its agent's failure to explain how appellant's coverage was less than 'full and complete.' Appellant, although un-schooled in insurance, could understand that, because of the policy limits, she would not receive more than $15,000 from her insurer for a given accident."

*Standard Venetian Blind Co. v. Am. Empire Ins.*, 503 Pa. 300, 469 A.2d 563 (1983) also presented issues similar to those now before us. There, the insured alleged that he had never read his insurance policy. "He stated that he had not read the policy because he had relied on the judgment of the ... Insurance Agency and because he had indicated ... that 'we wanted full coverage on everything we have.'" The Supreme Court held that the insured was bound by the policy's terms even though he did not in fact receive coverage for damage caused by the insured's products.

The Supreme Court wrote: "Manifestly, to allow [the insured] to avoid application of the clear and unambiguous policy limitations in these circumstances would require us to rewrite the parties' written contract." *Id.*, 503 Pa. at 306, 469 A.2d at 566. The court, expressly holding that *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974) "is not to be followed," wrote:

> We believe that the burden imposed by *Hionis* fails to accord proper significance to the written contract, which has historically been the true test of parties' intentions. By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, *Hionis* makes the question of the scope of insurance coverage in any given case depend upon how a factfinder resolves questions of credibility. Such a process, apart from the obvious uncertainty of its results, unnecessarily delays the resolution of controversy, adding only unwanted costs to the cost of procuring insurance. Thus, *Hionis*, which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance contract, is not to be followed.

*Id.*, 503 Pa. at 306, 469 A.2d at 567.

In the instant case, according to appellant, when appellant asked the insurance representative to provide her full coverage, he assured her that the policies contained such coverage. In *McDonald*, and *Standard Venetian Blind Co.*, on the other hand, when the agent was asked to give full coverage, we are not told whether he affirmatively stated that such coverage was included. We find this distinction to be unimportant. The point of *McDonald* and *Standard Venetian Blind Co.*, is that reliance on an agent to do what the insured tells him to do is unreasonable if it is contradicted by a clear and unambiguous clause in the policy itself. On the basis of these precedents, even if appellants' factual allegations were true, the lower court's decision should not be disturbed.

We would go further, however, and question whether the issue of fraud is arbitrable at all. *Hade* held that an

agent's misleading statements as to the extent of coverage are arbitrable because of the well recognized policy favoring arbitration of all coverage-related issues. As we have noted, *supra*, it would require a strained sort of sophistry to distinguish the instant case from *McDonald* and *Standard Venetian Blind, supra*. They recognize the fundamental notion that the insured has a responsibility to familiarize himself with the general terms of the policy he has purchased. If this were not so, then the terms of the policy would become merely one factor among other evidence in determining the coverage of an insured.

According to *Hade*, before a dispute may proceed to arbitration, it must be "rationally related" to coverage. *Id.*, 349 Pa.Superior Ct. at 548, 503 A.2d at 984.

In the instant case, the arbitration clause in question states: "If we and a covered person disagree whether that person is legally entitled to recover damages ... either party may make a written demand for arbitration." The clause obviously refers to persons who are in some way legitimately covered by the insurance policy's terms. It surely could not be invoked by someone who is not so "covered" lest arbitration be available to *anyone* who claimed he believed he was insured because of the fraud of an insurance agent. The ruling in *Hade*, which was not mandated by any precedent, could lead to unexpected and unwanted consequences if carried to its extreme. The logical extension of that holding would permit one who was *never* in fact insured to invoke an arbitration clause and claim "arbitrability" on the ground that an insurance agent lied to him, thus making him believe he was "covered". While such an allegation is surely "rationally related" to coverage, we do not believe that it is a proper means to invoke arbitration. Neither do we believe fraud to be a proper subject for arbitration once arbitration is legitimately invoked. We must not forget the purpose of such an arbitration clause. "Its purpose is to prevent an insurer, having issued an uninsured motorist indorsement, from being subjected to liability by virtue of judgments obtained

in suits to which it is not a party." 29 A.L.R.3d *Uninsured Motorist Risk-Arbitration* § 2 (1970). Arbitration, so constructed, is not intended to provide an open forum for the reception of alternative pleas of insurer responsibility. Merely because an allegation "rationally relates" to coverage does not automatically make it arbitrable if it would place undue burdens on the arbitration process which are wholly unrelated to the purposes for which such arbitration was designed. Separate tort theories alleged in contravention of the clear terms of an insurance policy are not proper subjects of arbitration. *Hade* is thus overruled to the extent that our holding today contravenes it.

■ Moreover, absent fraud, our Supreme Court has written that an insured may not avoid the application of a clear and unambiguous limitation clause in an insurance policy. *Standard Venetian Blind Co. v. Am. Empire Ins., supra.*

■ Appellants also argue that it was reversible error for the lower court to decide this matter because the parties failed to have the testimony at the arbitration hearings stenographically transcribed. The appellants allege that it was erroneous to reverse the arbitrators' award when the lower court could not judge the sufficiency of the facts presented to the panel. In fact, appellants contend that the testimony concerned fraudulent misrepresentation. As we have indicated, this theory is not a sufficient basis on which to sustain the award in the instant case. (*See* our discussion, *supra.*)

■ Appellants also argue that Keystone cannot sustain its allegations against the restricted standards of the Arbitration Act of 1980. 42 Pa.C.S. § 7314 provides that the court shall vacate an arbitrator's award upon application of a party where: (a)(1)(iii) arbitrators exceeded their powers.[2] We believe that in considering evidence outside the policy,

---

2. The Keystone arbitration clause provided for arbitration under the Act of April 25, 1927, P.L. 381, No. 248, as amended, 5 P.S. Sec. 161 et. seq. Because the Act was repealed by the time of the arbitration hearing, the parties orally stipulated to arbitrate under the 1980 Act. 42 Pa.C.S.A. § 7302(a) of the 1980 Act states:

such as fraud, the arbitrators exceeded their authority. *See our discussion, supra.*

■ Appellants next argue that the arbitration clause of the policy was binding and that since no transcript of the

> (a) General rule.—An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter or any other similar statute, in which case the arbitration shall be governed by this subchapter.

It is not necessary for the parties to have amended the policy in writing to state that arbitration should be under the 1980 Act. The parties proceeded to arbitration relying on the fact that the 1980 Act was to apply and appellants do not argue that because there was no writing, the 1980 Act should not apply.

Moreover, the 1980 Act specifically states that its terms apply when 1) there is an agreement to arbitrate *in writing* (here, there was a written agreement to arbitrate, albeit under the 1927 Act) *and* 2) the writing expressly provides for arbitration under the 1980 act *"or any other similar statute."* While the 1927 and 1980 Acts are obviously not identical, they are similar in the sense that both attempted to impose a statutory solution to arbitration questions. Even if the 1927 Act is not considered a "similar statute", the parties still would not be subject to the common law arbitration standard of review for the following reasons.

Section 7302(d)(2) of the 1980 Act provides:

> (2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

Section 501(b) of Act 1980, Oct. 5. P.L. 693, No. 142, provides:

> "The provisions of 42 Pa.C.S. § 7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:
>
> "(1) An agreement made prior to the effective date of this act which expressly provides that it shall be interpreted pursuant to the law of this Commonwealth and which expressly provides for statutory arbitration."
>
> "(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927 (P.L. 381, No. 248), relating to statutory arbitration."

This section is found in the historical note to 42 Pa.C.S.A. § 7302. Therefore, pursuant to § 501(b)(2), even if the 1980 Act did not apply, the arbitration award may be corrected under § 7302(d)(2). This is the standard which the lower court used to correct the award. Our holding would be no different using either standard.

testimony was ordered, the parties must have intended to waive the right of appeal. We will not so lightly dispense with appellant's rights. While every inference of fact should be drawn in favor of the arbitration award, in light of our discussion *supra*, the similarity of the instant case with *McDonald, supra,* and *Standard Venetian Blind, supra*, the fact that the arbitrators' award was so greatly inconsistent with the policy's terms, and that the theory upon which the award was based was not in keeping with the theory previously advanced by the appellants, we will not presume that Keystone intended to waive its right to appeal.

■ Appellant placed much emphasis in this appeal on numerous alleged procedural errors on Keystone's part. These alleged errors do not rise to that level of significance which would necessitate reversal.

Appellants maintain that the lower court lacked jurisdiction to vacate the arbitrators' award because Keystone failed to comply with the Arbitration Act of 1980. They allege that Keystone was required to file a petition with the Prothonotary but instead submitted a motion to vacate with the motions court. We find this argument to be without merit. This court has held that an application to the court to vacate an award of arbitrators "shall be by petition and shall follow regular petition rules." *Haegele v. Pennsylvania General Insurance Company,* 330 Pa.Super. 481, 479 A.2d 1005 (1984). Even though Keystone did not file a petition with the Prothonotary, we believe that the lower court had jurisdiction to vacate the award. The lower court acquired jurisdiction when appellants filed their petition to compel arbitration. Having once submitted themselves to the court's jurisdiction in order to have the matter arbitrated, absent an allegation of prejudice, appellants will not be heard to complain when the losing party seeks to vacate the award.

Moreover, appellants allege that because Keystone failed to have appellants personally served by the Sheriff with copies of the motion to vacate the award, the lower court lacked jurisdiction. The Arbitration Act of 1980 provides:

"Unless the parties otherwise agree, notice of an initial application for an order of court shall be served in the manner provided or prescribed by law for the service of a writ of summons in a civil action." 42 Pa.C.S. § 7317. In *Keystone Wire and Iron Works, Inc. v. Vancor, Inc.*, 245 Pa.Super. 537, 369 A.2d 758 (1976), this court required that petitions to appoint an arbitrator be served *by the sheriff,* and not by mail. However, the instant case is distinguishable in that the appellants had previously submitted themselves to the court's jurisdiction when they filed the order compelling arbitration. The statute states that notice of an *initial* application for an order of court shall be served in the manner prescribed for the service of a writ of summons in a civil action. Once again, having already submitted themselves to the court's jurisdiction and having alleged no prejudice, appellants will not now be heard to complain that the service was improper.

Appellants also argue that Keystone's preliminary objections to their own preliminary objections to Keystone's Motion to Vacate Arbitrators Award should have been dismissed because of Keystone's failure to conform with Philadelphia Rule 139 which states that preliminary objections *must* be filed with the Prothonotary. Appellants allege that Keystone filed its preliminary objections *only* with the Motion Court. Appellants allege no prejudice here. Since the lower court had dismissed the parties' preliminary objections as being moot, we see no merit to this contention.

■ Finally, appellants argue that the order vacating the arbitrators' award denies them equal protection and due process under both the United States and Pennsylvania Constitutions because there was no legal basis for such an order. We disagree. The order vacating the award was not based on *factual* questions. Rather, even if the facts were as appellants allege, the law as espoused in *McDonald, supra,* and *Standard Venetian Blind, supra,* permitted the order to be vacated.

Order affirmed.

KELLY, J., files a concurring opinion.

127

KELLY, Judge, concurring:

I concur in the result reached by the majority. The appellant sought, and this Court authorized, arbitration of the issue of whether the insurance contract between the parties included underinsurance coverage. The tort theory of misrepresentation was not within the authorized scope of arbitration. Therefore the trial court properly vacated the award of the arbitrators which was based on a finding of misrepresentation, rather than coverage under the policy. I would affirm the order of the trial court on this basis alone, and would not reach out to consider whether *Hade v. Nationwide Insurance Co.,* 349 Pa.Super. 541, 503 A.2d 980 (1986), should be modified or overturned.