**Joseph C. FISHER, and Robin H. Fisher, Plaintiffs,**

**v.**

**AETNA LIFE INSURANCE & ANNUITY COMPANY, Defendant.**

**No. 96–CV–01768.**

United States District Court, M.D. Pennsylvania.

May 11, 1998.

Robert B. Bodzin, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, for Joseph C. Fisher, Robin H. Fisher, plaintiffs.

Vincent V. Carissimi, Pepper, Hamilton & Scheetz, Philadelphia, Donna Louise Fisher, Pepper, Hamilton & Scheetz, Harrisburg, for Aetna Life Insurance & Annuity Company, defendants.

## MEMORANDUM

CAPUTO, District Judge.

Plaintiffs filed the present action asserting claims for misrepresentation, negligence and consumer fraud under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 to 201–9.2. Defendant filed a motion for

summary judgment which is fully briefed and ripe for disposition. For the reasons discussed below, defendant's motion shall be granted.

## BACKGROUND

Sometime about 1989, plaintiffs decided to purchase life insurance policies. (Pl.'s Br. in Opp'n, Doc. No. 23 at 5.) Never having purchased life insurance before, plaintiffs went to a long-standing friend and insurance agent, Wally Butz of the Dreher Agency. *Id.* Wally Butz was the senior member of the agency and in the process of transferring his business to his son, Ted Butz. *Id.* In 1989, the Dreher Agency was an independent agency and the Butzs sold life insurance for about five companies, including defendant. (Pls.' Counterstatement of Material Facts ¶ 15.) From a number of policies and companies available, Ted and Wally Butz showed plaintiffs illustrations of defendant's universal life policy. *Id.* ¶ 22. On or about May 15, 1989, plaintiffs purchased the life insurance policies at issue from defendant. *Id.* ¶¶ 1, 5. Theodore Butz, of the Dreher Agency was the agent of record for the sale. (*See* Exhibits to Def.'s Statement of Material Facts, Ex. F .)

Plaintiffs' complaint turns on the distinction between two different types of life insurance. "Whole life" insurance entails paying a fixed premium, for permanent insurance for your whole life, with an investment feature. In contrast, "universal life" does not have a fixed premium, but premiums may be changed by the insurer to adjust to market conditions, such as fluctuations in interest rates and the cost of insurance. Thus, universal life is risky because the performance of the policy depends on the interest rates and costs of insurance that are credited and charged over the life of the policy. When the payment of the planned premium and the cash value is less than the cost of insurance, the policy will lapse unless the insured pays sufficient premiums to maintain it in force.

The policies plaintiffs purchased through the Butzs are universal life insurance policies with $100,000 death benefits. Plaintiffs, however, believed they were purchasing policies with a fixed $100,000 death benefit and a fixed premium until the policies matured at age 95. (Pls.' Br. in Opp'n at 2.) After plaintiffs learned that their policies could lapse prior to maturity, they filed the present action alleging claims of misrepresentation, negligence and consumer fraud.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie*, 682 F.2d 436

(3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323, 106 S.Ct. 2548.

## DISCUSSION

■ Plaintiffs assert claims for misrepresentation, negligence and consumer fraud.[1] Specifically, plaintiffs claim that defendant "misrepresented its universal life policies by providing misleading information to its agents, failing to make material disclosures in illustrations and sales materials and failing to advise the insured of the basic risks, features and operations of its policies." (Pls.' Br. in Opp'n at 11.) Plaintiffs argue that defendant embarked upon a deliberate and intentional effort to deceive its own agents and customers that the product being sold was whole life instead of universal life. *Id.* at 6–7.

Plaintiffs' misrepresentation claim can be separated into two parts: a) that the *policies* were inadequate because they failed to disclose the material risks; and b) that the *sales presentations* were inadequate because they failed to advise the insured of the basic risks. *Id.* at 11. The Court will address each of these allegations separately.

■ Under Pennsylvania law, to establish a claim of fraudulent misrepresentation plaintiffs must prove by clear and convincing evidence:

(1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless the misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may be either actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage as a proximate result.

*Wittekamp v. Gulf & Western, Inc.*, 991 F.2d 1137, 1142 (3d Cir.1993).

■ Pennsylvania law requires "the trial judge [to] decide as a matter of law before he submits a case to the jury whether plaintiffs' evidence attempting to prove fraud is sufficiently clear, precise and convincing to make out a prima facie case." *Mellon Bank*, 951 F.2d at 1409 (citing *Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 26 (3d Cir.1981)). Thus, in order to defeat a defendant's motion for summary judgment, a plaintiff

---

1. Under Pennsylvania law, an insurer can be held liable under the Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. §§ 201–1 to 201–9.2, only if there are fraudulent misrepresentations in order to sell a policy. *Aetna Cas. & Surety Co. v. Ericksen*, 903 F.Supp. 836, 841 (M.D.Pa.1995)(citing *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986)). Thus, in order for plaintiffs to maintain their claim for consumer fraud under the CPL, they must also prove the five elements of a misrepresentation claim.

Similarly, plaintiffs' negligence claim is contingent upon their claim for misrepresentation. If plaintiffs cannot show that any actionable misrepresentations or omissions occurred, then any negligence by defendant in training or supervising its agents is irrelevant. The Court will therefore first address plaintiffs' claims for misrepresentation.

must meet his or her burden of coming forward with evidence which could lead a jury to find clear and convincing proof of fraud. *Moffatt Enterprises, Inc. v. Borden Inc.*, 807 F.2d 1169, 1174–75 (3d Cir.1986). We find that plaintiffs in the present case have failed to provide clear and convincing evidence to support their claims of misrepresentation.

### A. *The Policies*

■ The first element of a claim for misrepresentation is a false representation. *Wittekamp*, 991 F.2d at 1142. Plaintiffs claim that the policies themselves are false representations because they are "confusing, unreadable and misleading in that they fail to disclose the basic nature and fundamental features of the product sold." (Pls.' Br. in Opp'n at 16.) Specifically, plaintiffs argue that the policies do not adequately disclose the inherent risks of the policy—its interest rate sensitivity and the fact that the policy may lapse prior to maturity.[2] *Id.* at 16–18. We disagree. Although no insurance policy is simple and straightforward, we find that plaintiffs' policies accurately convey the fact that their performance depends on future interest rates and that they could lapse, under certain conditions, prior to the policies reaching maturity at age 95.

On the first page of the Statement of Policy Cost and Benefit Insurance is the following provision:

IMPORTANT NOTICE: THE PROJECTED RESULTS OF YOUR IN-SURANCE PROGRAM MAY CHANGE WITH VARIATIONS IN THE INTEREST RATES CREDITED BY AETNA, THE COST OF INSURANCE RATES, EXPENSE FACTORS, AND THE FREQUENCY, TIMING AND AMOUNT OF YOUR PREMIUM PAYMENTS AND WITHDRAWALS.

(Compl. Ex. A at 3.)

Immediately below this warning are two side-by-side illustrations of the projected performance of the policies based on current and guaranteed rate assumptions. The first illustration is entitled CURRENT BENEFITS, which is followed by three asterisks and defined on the next page:

CURRENT BENEFITS ARE BASED ON CURRENT RATES AND ARE NOT GUARANTEED. THE CURRENTLY PAID ANNUAL INTEREST RATE IS 8.50%. IF THE CURRENT COST OF INSURANCE AND CURRENT INTEREST RATE ARE CHANGED, BENEFITS MAY BE MORE OR LESS THAN THE AMOUNTS SHOWN BUT NOT LESS THAN THE GUARANTEED BENEFITS.

(Compl. Ex. A at 4.)

The second illustration is entitled GUARANTEED BENEFITS, which is followed by four asterisks and defined on the next page:

GUARANTEED BENEFITS ARE BASED ON THE MAXIMUM GUARANTEED COST OF INSURANCE

---

2. Plaintiffs also argue that the policies are misleading because the words "universal life" do not appear anywhere in the policy. (Pls.' Br. in Opp'n at 16.) The policy is entitled "flexible premium adjustable life insurance adjustable death proceeds payable upon death prior to maturity date flexible premiums payable until maturity date or prior death net cash value proceeds payable if insured is living on maturity date non-participating." The Pennsylvania insurance regulations require that the first page contain a brief description of the nature of the policy as well as whether the policy is participating or non-participating. 31 Pa.Code § 89.11(d). Although this description my not exactly be "brief", the Court agrees with defendant that such language complies with the insurance regulations.

Further, the Court does not believe that the policy is misleading simply because it does not contain the words "universal life". For instance, plaintiff, Mr. Fisher, testified that he knew he was buying a "universal life" policy as opposed to a "whole life" policy. (Exhibits to Reply Memorandum, Doc. No. 27, Ex. M at 30.) Thus, to the average layperson, the words "universal life" alone, would not disclose the risks inherent in the policy.

AND AN ANNUAL INTEREST RATE OF 4.50%.

(Compl. Ex. A at 4.) This illustration shows that if interest is credited at the guaranteed minimum and costs assessed at the maximum, the death benefit, cash value and surrender value of the policy will be zero (0) at age sixty-five (65). *Id.*

On page two of the Statement of Policy Costs and Benefit Information appears the language:

IF PLANNED PREMIUMS ARE PAID THE POLICY WILL TERMINATE FOR INSUFFICIENT VALUE ON APRIL 1, 2010 ASSUMING THE INTEREST AND DEDUCTIONS AT THE GUARANTEED RATES.

(Compl. Ex. A at 4.)

On the page entitled Policy Specifications, the following notice appears:

THIS POLICY MAY TERMINATE PRIOR TO THE MATURITY DATE IF PREMIUMS PAID AND INTEREST CREDITED ARE INSUFFICIENT TO CONTINUE COVERAGE TO THAT DATE EVEN IF IT CONTINUES TO THE MATURITY DATE, THERE MAY BE LITTLE OR NO CASH VALUE TO BE PAID ON THAT DATE. COVERAGE MAY ALSO BE AFFECTED BY CHANGES IN CURRENT VALUES.

(Compl. Ex. A at 7.)

Thus, after review of the policies, the Court finds that the policies are not misleading or deceptive. The policies accurately inform the policyholder that they are interest rate sensitive and could lapse, depending on various circumstances, prior to maturity. Accordingly, the policies themselves cannot support a finding of misrepresentation.

### B. *The Sales Presentations*

Plaintiffs also claim that defendant engaged in a deceptive marketing practice to sell universal life. (Pls.' Br. in Opp'n at 4.) Plaintiffs argue that the misrepresentations made during the sales presentations were a result of defendant's negligence in training its agents. The argument is that defendant misrepresented its universal life policies by providing misleading information to its agents and failing to train its agents to disclose the basic risks and features of the policies.

In order for defendant to be liable for misrepresentations made during the sales presentations, the misrepresentations made by the Butzs, as a matter of law, must be imputed to the defendant. The law in Pennsylvania on determining the agency status of an insurance broker is based on the case of *Taylor v. Crowe.* 444 Pa. 471, 282 A.2d 682 (1971). In that case, plaintiffs argued that the insurance companies were liable for misrepresentations made by the broker because he was an agent of the insurance companies. *Id.* at 474, 282 A.2d at 683. The trial court directed a verdict in favor of the insurance companies because there was no evidence that the broker was an agent of the insurance companies. *Id.* On appeal, the Pennsylvania Supreme Court cited testimony to the effect that: the broker had complete charge of plaintiffs' insurance needs for several businesses, plaintiffs trusted the broker to go out and buy the best insurance he could get, and plaintiffs were not concerned with where the broker purchased the insurance. On the basis of this testimony, the Court found the precedent of *Taylor v. Liverpool & L & G Ins. Co.* to be controlling:

[w]here a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not of the insurer.

*Id.* at 475, 282 A.2d at 683 (citing *Liverpool,* 68 Pa.Super. 302, 304 (1917)). The Pennsylvania Supreme Court therefore affirmed the trial court's decision stating "[t]here was absolutely no evidence that [the broker] was the agent of the insur-

ance companies so as to make them liable for his representations." *Id.* at 476, 282 A.2d 682.

■ In the present case, there is similar evidence indicating that the Butzs were the agents of the plaintiffs and not defendant. Wally and Ted Butz were not career agents of the defendant. *Id.* Ex. B. Plaintiffs have admitted that the Dreher Agency was an independent agency in 1989 and that the Butzs sold life insurance policies for at least five different companies. (Pl.'s Counterstatement of Material Facts ¶ 15.) Moreover, there is no evidence which suggests that the plaintiffs thought the Butzs were agents for the defendant. *See Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co.,* 641 F.Supp. 297, 303 (E.D.Pa.1986).

Plaintiff, Mr. Fisher, testified that "it was old friends. Wally was always my insurance advisor and I needed advice, so it was the same old scenario." (Exhibits to Defs.' M. for Summ. J., Ex. A at 34.) He further testified "[i]t wasn't a matter of Wally coming to try to sell me a policy. It was a matter of Joe is going to buy a policy today, whatever it was it was, based on his best advice, and that's what we did." *Id.* at 36–37. In fact, Wally Butz was plaintiff's ex-wife's uncle. *Id.* at 24. Plaintiff purchased his first insurance policy from Wally Butz about thirty years ago and has purchased several different types of insurance through him. *Id.* at 26–27. *See also Rich Maid,* 641 F.Supp. at 304.

The nature of the relationship between the broker and the insured is a critical factor in determining the agency status of a broker. In this case, the evidence shows that plaintiffs did not seek out an agent of the defendant to purchase insurance specifically from defendant. Rather, plaintiffs went to Wally Butz, as a long-time insurance advisor, to purchase whatever insurance company and policy Mr. Butz recommended. In this situation, courts have held that the broker is acting as the agent

of the insured and not the insurer. *See, e.g., Crowe,* 444 Pa. at 471, 282 A.2d at 682; *Kairys v. Aetna Cas. & Sur. Co.,* 314 Pa.Super. 502, 461 A.2d 269 (1983); *Rich Maid,* 641 F.Supp. at 303.

The court in *Rich Maid* summarized the agency status as follows:

> Generally, an insurance agent is employed by an insurance company and represents the insurer's interests. An insurance broker is not employed by any specific insurance company and acts as a middle man between the insured and the insurance company. The broker solicits the public and then places the requested insurance with a company.

*Rich Maid,* 641 F.Supp. at 303 (citing 3 Couch on Insurance 2d § 25:93–94 (1984)).

■ While an insurance broker is usually an agent for the insured; in some situations, a broker can be an agent for the insured in some respects and an agent for the insurer in other respects. *Rich Maid,* 641 F.Supp. at 303. However, in order to find that a broker is an agent of the insurer, there must be some evidence which could be inferred as an authorization by the company to the broker. *Id.* Thus, the agency status of a broker depends on the relationship between the broker and the insured as well as the broker and the insurer. Evidence that a broker has apparent, if not actual authority, weighs in favor of a finding that the broker has authority to bind the insurer. *Id.* at 304.

In the present case, plaintiffs have submitted no such evidence. To defeat defendant's motion for summary judgment, plaintiffs must provide clear and convincing evidence of each element of misrepresentation. *Moffatt Enterprises, Inc. v. Borden Inc.,* 807 F.2d 1169, 1174–75 (3d Cir.1986). Plaintiffs therefore have the burden to prove that the Butzs were agents of the defendant in order to impute any actionable misrepresentations or omissions to the defendant. Plaintiffs have failed to submit any such evidence.[3] As

---

**3.** Plaintiffs, in their briefs and documents sub-    mitted, have not addressed the issue of the

discussed above, the evidence indicates that the Butzs in this case were acting as the agents of the plaintiffs and not the defendant. In the absence of any evidence of authorization, no agency relationship can be established between the Butzs and the defendant. *See Taylor,* 444 Pa. at 475, 282 A.2d at 683–84. Therefore, plaintiffs have failed to provide clear and convincing evidence that defendant is liable for any actionable misrepresentations or omissions made by the Butzs during the sales presentations.

▪ Furthermore, even if any misrepresentations made by the Butzs could be imputed to defendant, plaintiffs cannot prove that they justifiably relied on the misrepresentations. Plaintiffs have the burden to provide clear and convincing evidence that they justifiably relied on actionable misrepresentations or omissions. *Moffatt Enterprises,* 807 F.2d at 1174–75.

If plaintiffs were not satisfied with the policies, the first page of both policies provided plaintiffs with a "Right of Policy Examination." (Compl. Ex. A at 1.) Plaintiffs could have canceled the policies up to ten (10) days after they were delivered and received a full refund of their premiums. In fact, plaintiff, Mr. Fisher testified:

A: When the policy came in I sat down to read it and I had several questions and I called Wally, and he answered my questions.
Q: Can you tell me what questions you had?
A: Yes. One page of the policy [ ] had two charts and one showed one set of performance and the other showed another performance and I didn't understand the difference. And I called Wally to ask him about that. And at one spot in the policy it said something about the policy could lapse at a certain time. And he told me that yes, it could, you know, if the interest rates got down below 3% and the whole world would be bankrupt and it wouldn't make any difference anyway. And whatever questions I had he just assured me the policy was okay and not to worry about it.

(Exhibits to Defs.' M. for Summ. J., Ex. A at 37–38.)

The policy was therefore clear enough to provide some notice to plaintiff that the policies did not perform as plaintiff originally believed. Whether reliance on a misrepresentation is justified, is dependent in part on subjective factors such as the respective intelligence and experience of the parties. *See Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1144 (3d Cir. 1993). Mr. Fisher appraises real estate for a living and has a Master's degree, a real estate broker's license and a real estate appraiser's certification. Given his background and education, the express language in the policy, and Wally Butz's statement that the policy would not lapse unless the interest rate dropped below 3% and the whole world would be bankrupt; it is difficult to believe that plaintiff justifiably relied on misrepresentations that the policy was not interest rate sensitive and could not lapse prior to maturity.

Moreover, plaintiffs' policies contained a provision to the effect that an agent has no authority to bind defendant beyond the language of the written policy. The provision provides:

This policy and the application are the whole contract.... Only an officer of [defendant] may agree to a change in the policy, and then only in writing. All statements made by or for the Insured are representations and not warranties. No statement will be used to void the policy or defend against a claim unless it is contained in an application.

(Compl. Ex. A at 22.)

Thus, even if Wally Butz did provide false assurances, plaintiffs have not provided clear and convincing evidence that they justifiably relied on oral misrepresenta-

agency status of the Butzs.

tions which directly contradicted the language of the policy. *See Good v. Metropolitan Life Ins. Co.*, 166 Pa.Super. 334, 342, 71 A.2d 805, 809 (1950); *In re Prudential Ins. Co. of America*, 975 F.Supp. 584, 600 (D.N.J.1996). Accordingly, any misrepresentations made by the Butzs, during the sales presentation or afterward, cannot be the basis for plaintiffs' claims of misrepresentation.

■ Plaintiffs argue that the fact that Wally and Ted Butz were also confused about the nature of the policies and universal life shows that defendant trained them in a manner that ignored the fundamental risks of universal life. (Pls.' Br. in Opp'n at 10.) Plaintiffs claim that after attending the seminars, reading the materials and reading sample policies, Wally Butz believed that universal life was whole life insurance. *Id.* at 9. They also contend that Ted Butz believed that universal life provided for a level premium over the term of the policy and that so long as the annual premiums were paid, the policy would not lapse. *Id.* at 10.

Plaintiffs, however, have presented no evidence that demonstrates that Wally and Ted Butz did not understand the basic features of universal life. To the contrary, the evidence submitted shows that the Butzs received adequate sales training and materials from defendant. Wally Butz testified that he attended special training sessions for universal life and that when defendant came out with a new product, it made sure that their people understood it before it would license them to sell it. (Exhibits to Br. in Opp'n, Ex. J at 27–28.) He also testified that after the training he understood the basic differences between term life, universal life and whole life insurance. *Id.* at 28. He testified further that he knew that universal life was sensitive to fluctuations in interest rates, however, he admitted that his practice was to represent to the insured that the current rates shown on the projection was what would most likely occur over the lifetime of the insured. *Id.* at 32–37.

Ted Butz testified that he also went to training seminars by defendant and received training materials and brochures. (Exhibits to Reply Memorandum, Ex. L at 14–16.) He testified that he and his father selected the policy at issue because it was the "most competitive and best policy" that they had for universal life. (Exhibits to Br. in Support of M. for Summ J., Ex. D at 173.) He further testified that he brought a proposal to the sales presentation with the plaintiffs that explained how the policy would perform under the guaranteed interest rate, under the current interest rate and an assumed rate. *Id.* at 181. Moreover, he stated that it was his practice to explain this information to the insured. (Exhibits to Br. in Opp'n, Ex. O at 66.)

Plaintiffs have failed to present any evidence that shows that the Butzs were confused about universal life due to the deceptive and misleading training practices of the defendant. Indeed, the testimony of the Butzs is to the contrary.

We find that plaintiffs have failed to provide clear and convincing evidence to warrant submitting their claims of misrepresentation to a jury.[4] *See Mellon Bank*, 951 F.2d at 1409 (citing *Beardshall v. Minuteman Press Int'l, Inc.*, 664 F.2d 23, 26 (3d Cir.1981)). Defendant's motion for summary judgment will therefore be granted.

■

---

4. Because plaintiffs' claims of consumer fraud and negligence are contingent upon their misrepresentation claim (*see supra* note 1), these claims must also be dismissed.