Donald E. PIPER, Sr., Diana
L. Piper, Plaintiffs,

v.

AMERICAN NATIONAL LIFE INSUR-
ANCE COMPANY OF TEXAS, Insur-
ance Agency of America, Inc., Nation-
al Business Association Defendants.

No. CIV.A.1:CV–99–2190.

United States District Court,
M.D. Pennsylvania.

Sept. 26, 2002.

Dory L. Sater, Shagin & Anstine LLC, Harrisburg, PA, Crag R. Shagin, Shagin & Anstine LLC, Harrisburg, PA, for Plaintiffs.

Jonathan H. Rudd, McNees, Wallace & Nurick, Harrisburg, PA, Janet L. Rushing, Greer, Herz & Adams, Galveston, TX, for American Nat'l Life Ins. Co. of Texas.

Michael D. Reed, Mette, Evans & Woodside, Harrisburg, PA, for Nat'l Business Ass'n.

### MEMORANDUM AND ORDER

KANE, District Judge.

Currently pending before the Court are two motions to dismiss. The first, filed October 2, 2000, is a motion to dismiss Plaintiffs' amended complaint by Defendant American National Life Insurance Company of Texas ("American National"). After the filing of American National's motion to dismiss, the Plaintiffs filed their second amended complaint. By stipulation (Doc. No. 42) between Plaintiffs and American National, the motion to dismiss the amended complaint now applies to all of the claims asserted in the second amended complaint. The second motion to dismiss, which addresses the second amended complaint, was filed by Defendant National Business Association ("NBA") on August 20, 2001. American National and NBA will be known collectively as "Defendants."

The motions have been fully briefed and are ripe for disposition. This Memorandum and Order addresses the merits of each motion *seriatum*. For the reasons given below, American National's motion will be denied as to Counts I–IV, and granted as to Counts V–VIII, and NBA's motion will be denied as to Counts I–IV, and granted as to Counts V–VIII.

### I. Background

Plaintiffs Donald E. Piper, Sr. ("Mr.Piper") and Diana L. Piper ("Mrs.Piper") (collectively, "Plaintiffs") make the following allegations against defendants. On November 19, 1998, Plaintiffs discussed the purchase of health insurance coverage with an insurance salesperson named Dennis Shillen ("Mr.Shillen"). Plaintiffs allege that Mr. Shillen was recruited and trained by NBA, and that he was an authorized agent of American National. Plaintiffs filled out and signed an application for group health insurance that would be provided by American National. In order to

be enrolled in the group policy, which was issued by American National to NBA, Plaintiffs were required to become members of NBA. Therefore, Plaintiffs joined NBA at the same time they applied for the health insurance, paying a $12 fee for the membership.

On the application form, in a box marked "Special Request," Mr. Shillen wrote "EFF. 12/28/98" to indicate Plaintiffs' desire to have coverage begin on or before December 28, 1998. Plaintiffs allege that this effective date was an important consideration for them because their Blue Cross/Blue Shield coverage was expired. As of November 19, 1998, it was still possible for Plaintiffs to reinstate their lapsed Blue Cross/Blue Shield health insurance by paying the outstanding premium no later than November 30, 1998. They further aver that they relied on Mr. Shillen's representation that their American National/NBA policy would become effective by December 28, 1998 when they decided not to reinstate their Blue Cross/Blue Shield policy.

Another major concern for the Plaintiffs was Mr. Piper's hypertension, for which he had been treated for several years and which they wanted to be covered by their new health insurance policy. Plaintiffs claim that they discussed this concern with Mr. Shillen and disclosed Mr. Piper's hypertension on the application form, and that he did not inform them of any pre-existing condition restrictions. The second amended complaint also avers that Shillen did not know of the pre-existing condition term in the policy he was selling because Defendants failed to train him properly.

The insurance policy did not become effective by December 28, 1998. Plaintiffs assert that the application process was delayed by American National's failure to obtain and review Mr. Piper's medical records. Mr. Piper suffered a heart attack on January 15, 1999, underwent bypass surgery on January 19, 1999, and was hospitalized until January 31, 1999. Plaintiffs' insurance coverage became effective on February 1, 1999. American National refused to pay for any of the medical bills incurred during January 1999 because the coverage did not become effective until February 1, 1999. American National also refused to pay for medical bills incurred after February 1, 1999 that were attributable to the heart attack because of the pre-existing condition policy.

## II. *Jurisdiction*

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of Pennsylvania. American National is a Texas corporation with its principal place of business in Galveston, Texas, and NBA is a Mississippi nonprofit organization with its principal place of business in Dallas, Texas. The amount in controversy exceeds the statutory minimum. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Count VIII only.[1]

## III. *Federal Rule of Civil Procedure 12(b)(6)*

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

---

1. Without diversity, the Court would decline to assert supplemental jurisdiction over the other Counts, I–VII, pursuant to 28 U.S.C. § 1367(c)(2), or, as will be evident below, 28 U.S.C. § 1367(c)(3).

allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).[2]

## IV. *Discussion*

The parties agree that Pennsylvania law applies to the present dispute. Because this is a suit in diversity and many of the significant events, such as the solicitation, the filling out of the application, the eventual issuance of insurance, the underlying injury and the medical treatment, all occurred in Pennsylvania, the Court will apply Pennsylvania law.

### A. *American National's Motion to Dismiss*

### Count I: *Fraudulent Concealment*

Plaintiffs allege fraudulent concealment in Count I of the second amended complaint. They allege that the Defendants' agent and application form failed to inform them of the pre-existing condition policy that would be in the insurance contract. Plaintiffs alleged that the pre-existing condition policy barred coverage of Mr. Piper's heart attack and hypertension.[3] Had the Plaintiffs known of this policy, they would not have enrolled, and they would have reinstated their lapsed Blue Cross/ Blue Shield coverage.

The elements of fraudulent misrepresentation under Pennsylvania law are:

(1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless the misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may be either actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage as a proximate result.

*Fisher v. Aetna Life Ins. & Annuity Co.,* 39 F.Supp.2d 508, 511 (M.D.Pa.1998). "The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement." *Moser v. DeSetta,* 527 Pa. 157, 589 A.2d 679, 682 (1991). "[F]raud arises . . . where there is an intentional concealment calculated to deceive . . . ." *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188, 192 (1989).

In the second amended complaint, the Plaintiffs allege that: 1) Defendants "deliberately concealed" the nature of the health insurance's pre-existing condition policy in order to increase sales of its insurance; 2) the pre-existing condition policy was an important aspect of the Plaintiff's decision to purchase the offered health insurance, and, the concealment was intentional;[4] 3) Defendants knew or

2. Federal Rule of Civil Procedure 9(b) is not discussed by the parties, but is implicated because Counts I–III allege fraudulent acts. *See* Fed.R.Civ.P. 9(b); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1421. Because Plaintiffs allegations concern specific acts of the Defendants, Rule 9(b)'s particularity requirement is satisfied.

3. These are the facts as Plaintiff has alleged. The Defendants have stated that the policy issued does cover Mr. Piper's hypertension, and would have covered his heart attack had the policy become effective before its occurrence. (American National Reply Br. Supp. Mot. Dismiss Am. Compl. at 1–2, 4.) If that is

true, the facts would have been as the Plaintiffs believed when they decided to apply for the American National/NBA health insurance. If Defendants can prove that these conditions would have been covered, then Plaintiffs will be precluded from recovering under Count I or Count III. However, these counter-statements of facts are not considered at this stage in the proceedings.

4. If the concealment was not intentional and calculated to deceive, then Plaintiffs would need to show that Defendants had a duty to disclose the information. *See In re Estate of Evasew,* 526 Pa. 98, 584 A.2d 910, 913 (1990)("an omission is actionable as fraud

should have known that the pre-existing condition policy would be important to the Plaintiffs and that the policy offered would not cover pre-existing conditions; 4) their reliance was justifiable (implied in ¶ 26 of Complaint, and asserted in ¶ 66 as part of Count II);[5] and 5) Plaintiffs suffered financial loss and personal injury as a result of their reliance on Defendants' representations because they would have otherwise retained their Blue Cross/Blue Shield policy. These facts as alleged permit recovery for fraudulent concealment, so Court I will not be dismissed.

## Count II: *Fraudulent Inducement*

Plaintiffs allege that the Defendants fraudulently induced them by making misleading statements regarding the starting date of coverage. Mr. Shillen wrote "EFF. 12/28/98" on the application form. This caused Plaintiffs to apply for the insurance and not reinstate their lapsed Blue Cross/Blue Shield coverage.

■ The elements that must be alleged for a claim of fraudulent inducement are similar to those for fraudulent concealment in Count I above: 1) a false representation; 2) materiality; 3) scienter; 4) justifiable reliance; and 5) damage as a proximate result. The false representation alleged is that if the application for insurance were approved, the effective date would be the one requested by Plaintiffs, promised by the Defendants' agent, and written on the application. The second

element, that the starting date was a material aspect of the transaction, is sufficiently alleged. The third element is met because Plaintiffs allege that Defendants' agent represented to them, by writing "EFF. 12/28/98," that the effective date of the would be December 28, 1998, that Defendants knew or should have known of the falsity because they trained Mr. Shillen, and that these policies constituted an intentional scheme to produce more sales. Plaintiffs allege reasonable reliance, the fourth prong, and the fifth element has been met by Plaintiffs' averment that they allowed their Blue Cross/Blue Shield policy to lapse, the new insurance did not become effective on December 28, 1998, and Mr. Piper suffered a heart attack after December 28, 1998 but before coverage began on February 1, 1999.

■ Defendants argue that the Plaintiffs' reliance was not justifiable in light of the language on the application form, citing *Fisher v. Aetna Life Ins. & Annuity Co.,* 39 F.Supp.2d 508, 515 (M.D.Pa.1998). In *Fisher,* the court, ruling on a motion for summary judgment, held that the plaintiff failed to provide clear and convincing evidence of justifiable reliance when the language of the policy directly contradicted the agent's statements regarding the type of life insurance purchased.[6] See id. *Fisher* is inapplicable for several reasons. First, because this is a motion to dismiss and not one for summary judgment, it is premature to hold that Plaintiffs can not

---

5. In later proceedings, the Plaintiffs will have the burden of producing clear and convincing evidence to demonstrate that their reliance was justifiable. *See Fisher v. Aetna Life Ins. & Annuity Co.,* 39 F.Supp.2d 508, 515 (M.D.Pa. 1998).

6. In *Fisher* it was found that the salesperson was not in fact an agent of the insurance company, and the reliance discussion was an alternative basis for granting the motion for summary judgment.

only where there is an independent duty to disclose the omitted information"); *Smith v. Renaut,* 564 A.2d at 192 ("While a concealment may constitute fraud, mere silence is not sufficient in the absence of a duty to speak."). Such a duty would arise if, for example, the parties were in a confidential relationship. *See, e.g., Weisblatt v. Minnesota Mut. Life Ins. Co.,* 4 F.Supp.2d 371, 381 (E.D.Pa.1998)(discussing confidential relationship and not finding one between life insurance buyer and seller).

provide clear and convincing evidence. The question before this Court is whether Plaintiffs have alleged the claim. Second, with respect to the fourth element, *Fisher* stated that "[w]hether reliance on a misrepresentation is justified, is dependent in part on subjective factors such as the respective intelligence and experience of the parties." *Id.* This Court will not make a decision based on such subjective factors at the motion to dismiss stage. Third, the application states only what must occur before coverage will take effect—it places no time constraints on when coverage could begin. The representation at issue does not concern *how* coverage would become effective, but rather *when* the coverage would take effect. Therefore, there is no direct contradiction between the agent's representations and the application language, as there was in *Fisher*.

■ Defendants cite *Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investments* as authority for the proposition that "promises to do future acts do not constitute a valid fraud claim." 951 F.2d 1399, 1409 (3d Cir.1991)(internal quotation marks and citation omitted). A broken promise is not fraud under Pennsylvania law unless the promisor had no intention of keeping the promise *at the time* it was made. *See id.* at 1410 ("A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."(quoting Restatement (Second) of Torts § 530(1))). In this case, Plaintiffs claim that Defendants trained their agents to put effective dates on the applications, while having no intentions of honoring those dates. That is sufficient to allege the claim of fraudulent inducement.

**Count III:** *Pennsylvania Unfair Trade Practices and Consumer Protection Law*

■ Plaintiffs allege that fraudulent sales conduct lead them to believe that the insurance coverage would not contain a pre-existing condition policy,[7] and that this conduct was in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, ("UTPCPL") 73 Pa. Stat. § 201–2 et seq. A private cause of action is created by 73 Pa. Stat. § 201–9.2 for violations of § 201–2(4)((i)–(xxi)). Count III appears to allege violations of § 201–2(4)(xxi), which states: "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." In order to recover under § 201–2(4)(xxi), "the elements of common law fraud must be proven." *Prime Meats v. Yochim,* 422 Pa.Super. 460, 619 A.2d 769, 773 (1993)(interpreting § 201–2(4)(xvii), which is now 2(4)(xxi)). These elements are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result." *Id.*

The first element, misrepresentation, may include either a false representation or a concealment. The Pennsylvania "Supreme Court has determined that the Consumer Protection Law must be liberally construed." *Wright v. North Am. Life Assurance Co.,* 372 Pa.Super. 272, 539 A.2d 434, 438, (1988)(interpreting § 201–2(4)(xvii), which is now 2(4)(xxi)). *Wright* also stated that § 201–2(4)(xxi) was "intended by the legislature to be a broad prohibition against a wide variety of unfair acts," while holding that an insurance company's misrepresenting of pertinent facts regarding coverage, among other things,

---

7. If, as Defendants claim, the pre-existing condition policy would have included coverage of the hypertension and heart attack, then

Defendants must prevail on this Count. *See* note 3 supra.

was within its purview. *Id.* at 438, 437. A concealment was held to be actionable under the UTPCPL in *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427, 433, 428 (1985). In *Pekular,* the court held that an insurer's agent who "knowingly and purposefully *did not explain* that such an election would effectively reduce the total amount of primary health benefits" "unquestionably" fell within the UTPCLP's "expansive language." *Id.* (emphasis added).

In this case, Plaintiffs have alleged that Defendants concealed the pre-existing condition policy, despite Plaintiffs' concerns on the subject. This is sufficient to meet the first element of Count III. The second element is met by Plaintiffs' allegation that Defendants failed to properly train their agents by not informing them of the pre-existing condition policy. Plaintiffs allege that Defendants' failure to disclose the pre-existing condition clause was for the purpose of selling more insurance, which satisfies the third element. Plaintiffs allege that they relied upon these representations when deciding to apply for Defendants' insurance and to not reinstate their Blue Cross/Blue Shield insurance, and that they incurred significant medical bills as a consequence. These facts as alleged meet the requirements of the fourth and fifth elements.

█ Defendants argue that 40 Pa. Stat. § 756.2(f)(3) exempts them from the UTPCPL. Even if the exemption in § 756.2(f)(3) does apply to them, however, it does not encompass the UTPCPL. The exemption in § 756.2(f)(3) applies to § 756.2 and the regulations promulgated thereunder, but not to 73 Pa. Stat. § 201–2. In this case, the UTPCPL does apply

to the Defendants and Plaintiff have sufficiently alleged a claim under it to survive the instant motion.

## Count IV: *Breach of Contract*

Two theories exist that would permit Plaintiffs to recover for breach of contract; 1) that a contract was formed on November 19, 1998 that required Defendants to provide health insurance coverage by December 28, 1998, and 2) that the promise of a specific date was relied upon by Plaintiffs, causing them to let their former insurance lapse, with resulting damages from that reliance. The first is a breach of contract claim, and the second is a promissory estoppel claim. Both of these appear to be alleged in Count IV of the complaint.[8] These will be addressed separately.

### a) *Breach of contract*

█ In order to recover under a contractual theory, Plaintiffs need to show that a contract was formed that obligated Defendants to issue insurance by December 28, 1998. The alleged contract would be comprised of an agreement between Defendants' agent and the Plaintiffs in which the Plaintiffs agree to purchase the insurance and the Defendants agree to provide coverage by December 28, 1998. Defendants cite *Shipley v. Ohio National Life Insurance Co.,* 199 F.Supp. 782 (W.D. Pa.1961), *aff'd* 296 F.2d 728 (3d Cir.1961), as authority for the proposition that agents cannot bind the insurance company when the written application expressly forbids such action or has contradictory language. But in this case, the application states only that the insurance will not take effect until approval by the company.[9] The language

---

8. Although promissory estoppel was not expressly alleged *as such in the complaint,* both parties have discussed it in their briefs, so the Court will rule on it here.

9. The application states in part "I agree that: ... (c) *no insurance will take effect unless and until the application is approved by the Company ...."* (American National Br. Supp. Mot. Dismiss Am. Compl. at 14.)

does not contradict an agreement to provide coverage by a specific date if the application was approved. In other words, the agent could not grant approval but could set a reasonable date by which approval or disapproval would occur. Furthermore, the application language in *Shipley* forbade the agent from making contracts, whereas Defendants' form does not.[10] Therefore Plaintiffs and Defendants' agent were free to contract for just such a thing. Finally, the alleged contract in the instant case is evidenced in writing, as opposed to both *Shipley*, 199 F.Supp. at 783, and *Fisher*, 39 F.Supp.2d at 516, where the representations were oral. Plaintiffs have made allegations which are sufficient to plead the existence of a contract, and the breach of contract part of Count IV will not be dismissed.

### b) Promissory estoppel

 In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.

*Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606 (Pa.2000). The second amended complaint alleges that Defendants made a promise (the December 28, 1998 effective date), which they expected to cause Plaintiffs to act (purchase Defendants' insurance), and that Plaintiffs did refrain from renewing their old insurance or seeking other new insurance. Defendants argue, without citing authority, that the date written on the application could not be construed as a promise and that the reliance on it was not reasonable.[11] These are material issues to be determined in later proceedings. For now, Plaintiffs have alleged a claim for breach of contract based on the promissory estoppel theory.

### Count V: *Negligence*

 In their negligence claim, Plaintiffs allege that the Defendants mishandled the application, causing unnecessary delay in approval. Plaintiffs note that some jurisdictions recognize liability for delays in processing applications for health insurance.[12] The Pennsylvania courts have apparently not addressed this issue directly. Defendants rely on *Zayc v. John Hancock Mutual Life Insurance Co.*, 338 Pa. 426, 13 A.2d 34 (1940), for the proposition that Pennsylvania places no duty on insurers to diligently process claims. *See also Shipley v. Ohio Nat'l Life Ins. Co.*, 199 F.Supp. 782, 783 (W.D. Pa.1961), *aff'd* 296 F.2d 728

---

**10.** The application states in part: "the agent does not have the authority on behalf of the company to accept risks, or to make, alter or amend the coverage or to extend the time for making any payment due on such coverage." (American National Br. Supp. Mot. Dismiss Am. Compl. at 14.) The *Shipley* application states: "agents ... are [not] authorized to make or alter contracts." *Shipley*, 199 F.Supp. at 783.

**11.** Defendants argue that any reliance was unreasonable because 1) the language on the application made clear that coverage could not begin before approval, and 2) guarantee-

ing approval undermines the purposes of the application process. As discussed above in Count II and IV(a), the application language does not place any limits on when approval or disapproval can be determined. As for the second argument, a promised effective date did not guarantee approval, but as long as Plaintiffs were truthful about their medical histories, they could have reasonably expected to have been approved.

**12.** *See* Andrea G. Nadel, Annotation, *Liability of Insurer for Damages Resulting from Delay in Passing Upon Application for Health Insurance*, 18 A.L.R.4th 1115 (1982).

(3d Cir.1961) ("Since the company is under no duty to insure any applicant, it therefore cannot be held to any standard of care in processing an application."). Although insurance contracts may receive special scrutiny and impose duties on the insurers, any duty or breach of that duty in the instant case occurred before the contract *for insurance* became effective. *See Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.,* 457 F.Supp. 1158, 1166–68 (E.D.Pa.1978)(noting "special considerations pertaining to insurance contracts"). This pre-insurance period is addressed by *Zayc* and *Shipley,* and has not been overruled. Plaintiffs aver that a "contract for health insurance" was formed when the application was signed. (Second Amended Complaint ¶ 98.) Plainly, however, they did not expect coverage to begin immediately,[13] and so the mishandling of the application occurred before an insurance contract was formed. There is no duty in this pre-insurance period under Pennsylvania law, and so no negligence claim can be made. Count V fails to state a claim upon which relief may be granted.

## Count VI: *Intentional Infliction of Emotional Distress*

 Plaintiffs allege that the delay in processing the application was extreme and outrageous, which caused emotional distress that contributed to Mr. Piper's medical problems. "Although we have never expressly recognized a cause of action for intentional infliction of emotional distress, and thus have never formally adopted [§ 46] of the Restatement [ (Second) of Torts], we have cited the section as setting forth the minimum elements necessary to sustain such a cause of action." *Taylor v. Albert Einstein Med. Ctr.,* 562 Pa. 176, 754 A.2d 650, 652 (2000). "Pennsylvania courts have been chary to declare conduct 'outrageous' so as to permit recovery for intentional infliction of emotional distress and have allowed recovery only in limited circumstances where the conduct has been clearly outrageous." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988)(internal quotation marks omitted).

 "As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery." *Id.* The conduct complained of must be extreme and outrageous in order to survive a motion to dismiss. Comment d of § 46 describes the conduct as that which causes an average member of the community to say "Outrageous!" Restatement (Second) of Torts § 46, comment d; *see also Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988, 991–92 (1987)(quoting comment d). To recover under this theory, the conduct must "go beyond all possible bounds of decency." *Cox,* 861 F.2d at 395 (using language of comment d). Indeed, "sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for the intentional infliction of emotional distress." *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 754 (1998);

**13.** The Court reads ¶ 98 of the second amended complaint to mean that a contract, either written or oral or both, was entered into by the parties on November 19, 1998 that bound the Defendants to supply insurance by December 28, 1998. It may even mean that the terms of that future insurance policy were fixed and would supercede any later language. But it could not mean that Plaintiffs were covered under the insurance policy as of November 19, 1998. In *Collister v. Nation-* *wide Life Insurance Co.,* the court placed the burden on the insurance company to show that the consumer had no reasonable basis to think that coverage had begun in the interim between the acceptance of a premium and issuance of the policy. 479 Pa. 579, 388 A.2d 1346, 1353 (1978). In the instant case, however, it is clear from the allegations that the Plaintiffs knew they were not covered before February 1, 1999.

*Andrews v. Philadelphia,* 895 F.2d 1469, 1487 (3d Cir.1990) (same). *See also Cox,* 861 F.2d 390 (firing of employee on the day he returned from heart surgery not actionable); *Green v. Bryant,* 887 F.Supp. 798 (E.D.Pa.1995) (firing of victim of spousal abuse not actionable); *Frankel v. Warwick Hotel,* 881 F.Supp. 183 (E.D.Pa. 1995) (finding threat to discharge son unless he divorced his wife not actionable); *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963) (finding clam investigator's invasive surveillance tactics not actionable); *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.2d 770 (1976) (abusive and insulting conduct of debt collection agents in publicly and wrongfully threatening plaintiffs with expulsion from their home not actionable). The delay in processing an application does not approach the high bar set by Pennsylvania law. Dismissal of Count VI is appropriate given the allegations in the second amended complaint.

### Count VII: *Negligent Infliction of Emotional Distress*

 Plaintiffs allege that Defendants negligently processed the application, which caused them emotional distress. Pennsylvania allows for the following two claims for negligent infliction of emotional distress:

> The first and most common situation giving rise to a claim is the so-called "bystander" case in which the plaintiff actually observes the defendant injure a close relative, as in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (Pa.1979). Second, Pennsylvania also recognizes recovery in situations in which the defendant owes a plaintiff a pre-existing duty of care, either through contract or a fiduciary duty.

*Corbett v. Morgenstern,* 934 F.Supp. 680, 682–83 (E.D.Pa.1996) (citations omitted); *see also Shumosky v. Lutheran Welfare Servs. of Northeastern PA., Inc.,* 784 A.2d 196 (2001). This is not a bystander case, so in order to state a claim of negligent infliction of emotional distress, there must have a duty of care upon Defendants during the processing of the application. As discussed above in Count V, under the alleged facts Defendants had no such duty under Pennsylvania law. Therefore no valid claim is stated in Count VII.

### Count VIII: *Racketeer Influenced and Corrupt Organization Act*

 Civil actions are permitted under 18 U.S.C. § 1964(c) by persons injured in their business or property by reason of a violation of 18 U.S.C. § 1962. Plaintiffs allege that a violation of § 1962(a), which provides in pertinent part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

18 U.S.C. § 1962(a). Plaintiffs must allege that they were injured in their business or property by an enterprise engaged in interstate commerce, that the enterprise derived income from a pattern of racketeering activity, and that the use of that income caused Plaintiffs' injury. *See Rose v. Bartle,* 871 F.2d 331, 356–58 (3d Cir.1989)("requiring the allegation of income use or investment injury is consistent with both the literal language and the fair import of the language [of section 1692(a) ]" (alteration in original)(internal quotation marks omitted)). For the racke-

teering activity, Plaintiffs allege Mail Fraud (18 U.S.C. § 1341) as the predicate acts, because Defendants conduct some of their business through the mail. The injury to property alleged by Plaintiffs is the loss of their premium and the lack of coverage for medical bills incurred in January 1999. The income is the money received from premium payments.

In ¶¶ 155, 161, 162, 165, and 166 of the second amended complaint, Plaintiffs attempt to plead the causation element, the use or investment of racketeering income, by suggesting that the racketeering activity was, in essence, self-perpetuating. Defendants obtained money based on bad faith insurance activities, and then reinvested that money in the same business in order to grow, thereby repeating the bad faith insurance activities. The Third Circuit has rejected this line of reasoning in 18 U.S.C. § 1964(c) actions which allege § 1962(a) violations. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188–1189 (3d Cir.1993)("we have recognized repeatedly that this type of allegation—that the use and investment of racketeering income keeps the defendant alive so that it may continue to injure plaintiff—is insufficient to meet the injury requirement of section 1962(a)"); *Glessner v. Kenny*, 952 F.2d 702, 708–10 (3d Cir.1991); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303–05 (3d Cir.1991)("If this remote connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation."). Since Plaintiffs do not allege any other causation, no claim can be maintained. Count VIII fails to adequately alleged a § 1964(c) claim.

### B. *NBA's Motion to Dismiss*

For the same reasons that Plaintiffs' claims in Counts V–VIII against American National fail, they must also be dismissed against NBA. However, NBA's motion to dismiss includes an additional argument for dismissal of all claims against it. NBA argues that the allegations in the complaint are not applicable to them because they are not an insurance company. They argue that they are simply an association that provides many benefits for its members, among which is group health insurance. According to NBA, it should have no liability because it is a passive participant with little connection to the health insurance.

Plaintiffs allege that NBA recruited and trained the agent, Mr. Shillen, who sold the policy to them. They allege that the agent identified himself as representing NBA. They also allege that they had to become members of NBA in order to be eligible for the insurance. Indeed, membership dues were listed as part of the first premium, and Plaintiffs' check was written out to NBA. Even if NBA's primary purpose is not to provide insurance to its members, by recruiting members through insurance sales it has a motivation to increase the sales of that insurance. These allegations could create liability for NBA through agency or respondeat superior principles. Given the alleged active participation of NBA in the soliciting of new individual insureds, NBA could be considered an agent of American National. *See Washington Nat'l Ins. Co. v. Burch*, 293 F.2d 365 (5th Cir.1961)(holding that under Georgia law a holder of a master insurance policy is an agent of the insurance company and not the insurer); *Fiorentino v. Travelers Ins. Co.*, 448 F.Supp. 1364 (E.D.Pa.1978)(finding liability for an agent of insurance company).

Finally, the alleged activities of NBA are alleged to be a proximate cause of Plaintiffs' damages. There is nothing in Counts I–IV that limits application of those claims to only health insurance companies. The insurance coverage itself is

not at issue,[14] rather, the representations made during the sale and the delays during processing of the application are at the center of the dispute. Plaintiffs' allegations of NBA's involvement are sufficient to state valid claims. Counts I and II involve concealment and misrepresentation, actions of which anyone is capable. Count III relies on a statute, 73 Pa. Stat. § 201–2, and "incorporated or unincorporated associations" are included within its scope. The breach of contract and promissory estoppel claims in Count VI are not specific to particular kinds of entities. Therefore, the claims in Counts I–IV will survive against both remaining Defendants.

## V. *Order*

**AND NOW**, this _____ day of _____, 2002 **IT IS ORDERED THAT**:

1. Defendant American National Life Insurance Company of Texas's motion to dismiss Plaintiffs' amended complaint (Doc. No. 21) is **DENIED** as to **COUNTS I–IV** and **GRANTED** as to **COUNTS V–VIII.**

2. Defendant National Business Association's motion to dismiss Plaintiffs' second amended complaint (Doc. No. 43) is **DENIED** as to **COUNTS I–IV** and **GRANTED** as to **COUNTS V–VIII.**

3. A telephone conference will be held to set a schedule for this matter. The telephone conference will be held on _____, 2002 at _____. Plaintiffs' counsel shall initiate the call.

---

14. The exception is whether the hypertension is covered. *See* note 3 supra.